533 A.2d 1008

**Suzanne JARRETT, Appellee,**

**v.**

**WATTSBURG AREA SCHOOL DISTRICT, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 23, 1987.

Decided Dec. 3, 1987.

Christine Hall McClure, McClure, Dart, Miller, Kelleher & White, Erie, for appellant.

John J. Barber, Erie, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

The Wattsburg Area School District (District) appeals from an order of the Commonwealth Court which affirmed an order of the Court of Common Pleas of Erie County. The latter court had reinstated appellee to a position of guidance counselor following her appeal from the Wattsburg Area School District Board of Directors' (Board) affirmance of a furlough.

The facts of the case are not in dispute. Ms. Suzanne Jarrett was hired by the District in 1974, to serve in the capacity of guidance counselor. At that time she was certified by the Department of Public Instruction in that field. Mr. James Tonks was hired by the District in 1971. In 1976, he completed the necessary course work for certification as a guidance counselor but did not at that time apply for certification to the Department of Public Instruction. At the time of the events which gave rise to this dispute he was assigned as a teacher of Spanish and Driver Education, as well as a supervisor for study hall and lunch periods.

In April of 1983, the Board upon recommendation of the superintendent decided to reduce the District's Driver Education program and change its format. On April 26, 1983, the Department of Public Instruction approved the changes proposed to it by the Board. The Driver Education reduction occasioned a need for a reduction in its staff and other adjustments for the school year 1983–84. Other certificated teachers were available to staff the reduced Driver Education program and to assume Mr. Tonk's Spanish classes as well. As a consequence he became a candidate for furlough.[1] However, in order to furlough Mr. Tonks or any other tenured teacher the School Code required that certain procedures were to be followed. Specifically, it provides:

Persons to be suspended

(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

. . . . .

(c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certifi-

1. This was in accordance with the requirements of the School Code which provides in pertinent part for the suspension of professional employees as follows:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated.

. . . . .

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

Act of March 10, 1949, P.L. 30 art. XI § 1124. 24 P.S. § 11–1124.

cated and which are being filled by less senior employes....

24 P.S. § 11–1125.1. Act of March 10, 1949, P.L. 30. *As amended* July 10, 1986 P.L. 1270, No. 117, § 4.

Mr. Tonks, upon hearing of the possible furlough, applied to the Department of Public Instruction for his guidance counselling certificate on May 10, 1983. On May 16, 1983, acting on information that Mr. Tonks was qualified for and about to receive his certificate, the superintendent recommended that Ms. Jarrett be suspended because she was less senior than Mr. Tonks in terms of the dates of their respective hirings. The Board adopted the recommendation. Ms. Jarrett's suspension was to take effect "at the commencement of the 1983–84 school year." She was notified of this by letter from the Board on May 17, 1983. Sometime in June, 1983, Mr. Tonks actually received his secondary guidance certificate from the Department of Public Instruction.

The District's schools closed for the summer on June 20, 1983. However, Ms. Jarrett continued to receive the benefits of her position through August 28, 1983, and her suspension did not take effect until August 29, 1983. In the meantime she requested and was granted a hearing regarding the proposed furlough. This hearing took place at two sessions, on August 22 and September 13, 1983.[2] On December 5, 1983, the Board adopted findings of fact and conclusions of law, and upheld her suspension. Ms. Jarrett then appealed the agency action to the court of common pleas.

The Erie County Court of Common Pleas, relying on *Penzenstadler v. Avonworth School District,* 43 Pa. Cmwlth. 571, 403 A.2d 621 (1979), determined that the assignment of Mr. Tonks to Ms. Jarrett's position was contrary to the requirements of the statute in that at the time of the District's decision Mr. Tonks was not certified in

2. Pursuant to the provisions of the Local Agency Law, Act of April 28, 1978, P.L. 202 No. 53 § 5 *et seq.* 2 Pa.C.S. § 101 *et seq. See* 2 Pa.C.S. § 551 *et seq.;* 2 Pa.C.S. § 751 *et seq.*

guidance, and that the decision to retain Tonks and suspend Jarrett improperly anticipated his certification by the Department of Public Instruction. *Jarrett v. Wattsburg Area School District,* Erie Co. Court of Common Pleas, Civil Division—Law, No. 4912–A–1983 (September 21, 1984).

The court also determined that Ms. Jarrett's suspension was improper for two other reasons: that the District placed a higher priority on finding a place for Mr. Tonks than on the educational and practical implications of their decision; and that even if the original decision was correct the District should have replaced Ms. Jarrett in her position after July 1983, when an Alternate Education position became available, in which case the District could have assigned Mr. Tonks to the available position and allowed for the restoration of Ms. Jarrett. Consequently, the court reversed the Board's order and directed that Ms. Jarrett be reinstated as the guidance counselor.

The District appealed to the Commonwealth Court, claiming error in each of the trial court's rulings. A panel of that court held that a school board is required to rely on the record of certification as provided by the superintendent at the time of suspension. It therefore affirmed the order of the common pleas court while declining to consider the alternate grounds for reversal of the District's decision stated by the latter court, *Wattsburg Area School District v. Jarrett,* 99 Pa.Cmwlth. 569, 571 n. 2, 513 A.2d 588, 589 n. 2 (1986).

The District petitioned this Court and we granted allocatur.

The District contends that in determining the propriety of its action the date on which the action was to take effect must control and not the date it was decided to suspend Ms. Jarrett. It further contends that the time of the suspension was August 29, 1983, when Ms. Jarrett was dropped from the District payroll, and not May 16 or 17, 1983, when the Board made its decision and notified her of its intentions. It concludes that since Mr. Tonks was certified as a guidance counselor and possessed greater seniority than Ms.

Jarrett on the effective date of her suspension its actions were proper in terms of the statute. *See* 24 P.S. 11–1125.-1(c), *supra.*

Ms. Jarrett makes alternative responses to the District's argument. First she asserts that case law requires that the propriety of her suspension must be assessed as of the date that the Board made the decision to suspend her. Secondly, she argues that even assuming that the effective date controls, the District erred because as a matter of fact she was actually suspended prior to the time that Mr. Tonks received his certificate. In either event, she contends that the District violated the statute in the manner in which it accomplished her furlough.

Our initial task is to determine the effective date of the suspension. We are confronted with three possibilities, the day the Board decided to furlough Ms. Jarrett, the following day when it notified her of its decision, or the first day of the new school year.

In the case *Penzenstadler v. Avonworth School District, supra,* the Commonwealth Court held that in effectuating realignment a school district cannot anticipate the receipt of a certificate. In arriving at this conclusion the court clearly stated that "the Board [is] required to rely on appellant's record of certification as provided by the Superintendent *at the time of suspension.*" *Id.* 43 Pa.Cmwlth. at 577, 403 A.2d at 624 (emphasis added). *See also Occhipinti v. Board of School Directors of Old Forge,* 76 Pa.Cmwlth. 516, 464 A.2d 631 (1983) (termination not improper despite subsequent recertification). We agree with this statement of the law. However, it is of little help to us here where the germane issue is determining the actual "time of suspension". For this reason we think the lower court's reliance on this case was misplaced.

In resolving the issue of establishing the actual date of suspension we find guidance in the recent decision of *Pookman v. School District of the Township of Upper Saint Clair,* 506 Pa. 74, 483 A.2d 1371 (1984). In that case the issue concerned the effect of a school district's decision not

to renew certain teachers' contracts at the end of a two year term. The significance of the two year figure was that it constituted the threshold period for a teacher to be awarded tenure, and hence to receive significantly increased job security. *See* 24 P.S. § 11–1108(b).

Under the facts of *Pookman* the school district had decided in April, 1981, that the teachers' contracts would not be renewed. That decision was to take affect on the last day of the contract, which was June 12, 1981. The issue which was before this Court was whether the successful completion of a two year contract prevented the school district from treating the teachers as non-tenured in making their realignment decisions. A majority of this Court, albeit not for the same reasons, agreed with the school district that these teachers could be treated as non-tenured, since they had not been "tendered a regular contract of employment at the end of two years of service". 24 P.S. § 11–1108(c). Mr. Chief Justice Nix and Mr. Justice Zappala dissented from this view on the basis that tenure attached automatically at the end of two years so long as the teacher in question was not rated "unsatisfactory".

The final resolution of *Pookman* is not particularly germane to our present controversy. What is important, however, is that in *Pookman* we did not look to the date of the Board's decision as the operative date, but instead looked solely to the date of the decision's *effect*, i.e., June 12, which was the last date of their contract. We think a similar view is necessary in this case.

Turning to the actual facts of this case we find that the resolution of the Board on May 16, 1983, which furloughed Ms. Jarrett, stated "[a]ll furloughs will become effective at the commencement of the 1983–84 school year." Transcript of Local Agency Hearing, Wattsburg Area School District, (September 13, 1983) Administration Exhibit 15. The letter sent to Ms. Jarrett on May 17, 1983, notified her likewise that "you will be furloughed effective at the commencement of the 1983–84 school year." *Id.* Administration Exhibit 16. There is nothing in the record to indicate that

any of the parties hereto understood or intended the phrase "commencement of the school year" to mean anything other than August 29, 1983. In addition, as we noted above, Ms. Jarrett's entitlement to benefits continued through August 28, 1983.

It is also important to note that it was standard procedure in this school district, as it probably is in most school districts, to reevaluate, just prior to the new school year, the planning decisions which were made in the spring. This is necessitated by unexpected events such as death, resignation, or other events that defy the best planned schedule. These occurrences often require last minute rearrangements based on seniority, and what happened to Ms. Jarrett here was in effect no different.

Therefore, since Mr. Tonks was possessed of greater seniority than Ms. Jarrett, and had the requisite certificate on the effective date of suspension, we cannot say that her suspension was accomplished in a manner contrary to the provisions of the statute. 24 P.S. § 11–1125.1

Accordingly, the order of the Commonwealth Court is reversed and the record is remanded to that court for disposition of appellant's remaining issues.

HUTCHINSON, Former Justice, did not participate in the consideration or decision of this case.