524 A.2d 546

Jan Dallap et al., Appellants *v.* Sharon City School District, Appellee.

Sharon City School District, Appellant *v.* Jan Dallap et al., Appellees.

Argued November 17, 1987, before Judges BARRY and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Daniel R. Delaney, Delaney and Evans,* for appellants/appellees, Jan Dallap et al.

*William G. McConnell, Cusick, Madden, Joyce and McKay,* for appellee/appellant, Sharon City School District.

OPINION BY SENIOR JUDGE KALISH, April 21, 1987:

These are consolidated appeals from an order of the Court of Common Pleas of Mercer County which reversed the Sharon City School Board's (Board) suspension of Michele Grunenwald and affirmed the Sharon City School District's (School District) decision to retain Vicky Lingner. These actions were taken under a program of realignment of schoolteachers pursuant to sections 1124 and 1125.1 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§11-1124 and 11-1125.1. Also before this court is the School District's motion to strike appeal of record. We deny the School District's motion and affirm the trial court's decision on the merits.

The trial court's opinion and order, entered on July 10, 1985, reflected two distinct issues which were decided by the court, one regarding the retention of Lingner and the other regarding the suspension of Grunenwald. On August 9, 1985, appellants, Jan Dallap et al., filed an appeal which was docketed at No. 2184 C.D. 1985. Also on that date, Grunenwald filed a petition for reconsideration and clarification as to the second part of the court's order, questioning the court's meaning of its use of the word "reinstatement." The trial court granted the petition on August 9, 1985, and on November 4, 1985, the court entered an order clarifying the July 10, 1985 order and awarding back pay to Grunenwald. On December 2, 1985, the School District filed a notice of appeal which was docketed at No. 3244 C.D. 1985. On January 24, 1986, the School District filed a motion to strike appeal of record in No. 2184 C.D. 1985. That same day, Grunenwald's attorney filed an answer to the motion to strike. On January 27, 1986, this court ordered the consolidation of these two cases and that the motion to strike be listed with the merits.

The School District asserts that the appeal of August 9, 1985 (No. 2184 C.D. 1985) be stricken under Pa. R.A.P. 1701(b)(3), because the trial court granted Grunenwald's motion for reconsideration. The motion, however, was granted only as to Grunenwald and not as to Lingner. Accordingly, the motion to strike the appeal in No. 2184 C.D. 1985 should be denied in light of the narrow grant of the motion for reconsideration.

Although appeal No. 2184 C.D. 1985 involves the Lingner situation only and appeal No. 3244 C.D. 1985 involves the Grunenwald case, we will discuss the two appeals together. The facts are undisputed. Following a decline in enrollment throughout the Sharon City School District, a hearing was held on August 16, 1982, at which the Board determined that certain positions of schoolteachers should be eliminated. Grunenwald had been certified by the Board of Education, and taught chemistry for about ten years. During this period of time, she had fulfilled all of the requirements for an Instructional II Reading Specialist certification from the Department of Education; however, she was not teaching reading in the school. Although the School District had received notification of this certification, her file did not contain the actual certification.

Grunenwald contends that she was suspended despite the fact that she could have been realigned into a reading teacher position held by a less senior teacher, and that this suspension violates section 1125.1 of the Code, 24 P.S. §11-1125.1.

Lingner, certified as an English teacher, was retained as a coordinator of a gifted program, although she was less senior than several of the other teachers who were suspended. No special certification for this position is required.

The Board found that it would be educationally unsound to put Grunenwald into the English teaching

position of another who had less seniority, because even though certified in English, her experience was teaching chemistry and science for several years. As to Lingner, the Board found that even though she was certified as an English teacher, it would have been disruptive to the gifted program to replace her with another who had more seniority.

On review, where a full and complete record was made, we must sustain the local agency adjudication unless any finding of fact necessary to support its adjudication is not supported by substantial evidence, constitutional rights were violated, an error of law was committed, or the procedure before the agency was contrary to statute. *Appeal of Suspension of McClellan,* 82 Pa. Commonwealth Ct. 75, 475 A.2d 867 (1984).

Section 1125.1(c) of the Code, 24 P.S. §11-1125.1(c), provides:

> (c) A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.

While our courts have recognized that it was the intent of the legislature to make seniority the sole criterion for determining which teachers are to be suspended when staff cuts are necessary, this court has continued to recognize the propriety of considering the practicability of staff assignments and have examined realignment plans to determine whether the exercise of the Board's discretion was unreasonable in its impact on the educational process. Thus, in *Godfrey v. Penns Valley Area School District,* 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982), the court limited staff cuts to members of an area of certification of a particular department, such as the music department, where the teacher who was certified to teach only music and who had the least

seniority in the music department was suspended. The court refused to move senior members of the music department who had multiple certification into other departments to replace those with less seniority than the teacher who was suspended. The court recognized that to realign all staff members to insure that the least senior member of the entire staff is suspended would require an examination of its effect on the educational process.

In *Platko v. Laurel Highlands School District,* 49 Pa. Commonwealth Ct. 210, 410 A.2d 960 (1980), while the suspended teacher may have had more seniority than the retained teacher, we held pursuant to section 1124(1) of the Code, 24 P.S. §11-1124(1), that the suspension was not an abuse of discretion where there was a substantial decrease in enrollment, and that any cause, under these circumstances, would be sufficient to suspend a professional employee. Furthermore, in *Platko,* where the suspended teacher, having more seniority, was certified as an elementary education teacher and the retained teacher was certified to teach music in the junior high school, the record showed that to ignore the Board's plan would require moving two other teachers from their present positions. The school district did not abuse its discretion in considering the educational impact of such a move.

At the hearing on August 16, 1982, Robert La Penna, superintendent of schools, testified that although Lingner is certified as an English teacher, she currently holds the position of coordinator of the gifted program, and that as part of her duties she implements that program both on the junior and senior high school levels. He stated that she has developed an expertise in this field, including contacts with members of the community. The record shows that to order a suspension on the basis of seniority would require a shuffling of the faculty

to replace Lingner. It would be disruptive to the gifted program and would be impractical to place inexperienced teachers in this coordinator's position. Furthermore, since no special certification is necessary for this position, section 1125.1(c) of the Code, §11-1125.1(c), does not apply because it has been interpreted to apply only in dealing with positions requiring certification. *Gibbons v. New Castle Area School District*, 93 Pa. Commonwealth Ct. 28, 500 A.2d 922 (1985).

In *Board of School Directors of Chester-Upland School District v. Ashby*, 90 Pa. Commonwealth Ct. 405, 495 A.2d 665 (1985), this court held that the sole criterion for suspensions in a realignment case is seniority within the school district, not experience in a given class or level of education, provided that all the employees possess the same certification. A review of the facts in *Ashby* showed that the school district closed three elementary schools (first through fifth grades) and one middle school (sixth through eighth grades). No special certification was necessary for the middle class teachers other than that required for elementary schoolteachers. Despite the Board's conclusion that a chaotic condition would result if seniority were the sole criterion, this court held that where all the teachers possessed the same certification, suspension of a professional employee should be based upon seniority only.

As to Grunenwald, the fact that there were delays in processing her actual certificate as an Instructional II Reading Specialist will not affect her substantive rights. *Department of Education v. Great Valley School District*, 23 Pa. Commonwealth Ct. 423, 352 A.2d 252 (1976). A review of the record shows that Grunenwald had fulfilled all the requirements for certification as a reading teacher in 1977. The Board's finding that it would be "educationally unsound" for Grunenwald to teach a reading class because her experience had been

in teaching science is not supported by substantial evidence. It is not required that she have recent experience. All that is required is certification. To suspend her would violate the statute's mandatory realignment on the basis of seniority.

Accordingly, the School District's motion to strike appeal of record is denied and the decision of the trial court is affirmed.

ORDER

Now, April 21, 1987, the Sharon City School District's motion to strike appeal of record is denied. The order of the Court of Common Pleas of Mercer County, No. 1083 C.D. 1982, dated July 10, 1985, is affirmed. Furthermore, the order of the Court of Common Pleas of Mercer County, No. 1083 C.D. 1982, dated November 4, 1985, setting forth damages awarded to Michele Grunenwald, is affirmed.

---

CONCURRING AND DISSENTING OPINION BY JUDGE PALLADINO:

I concur in the dismissal of the Sharon City School District's[1] (School District) motion to strike the appeal and in the affirmance of the School District's retention of Vicky Lingner. I dissent to the reinstatement of Michele Grunenwald (Grunenwald) and to the award to her of compensation.

Grunenwald was employed by the School District in 1973 and taught chemistry at the secondary school level until her suspension in 1982. Grunenwald, who is certificated in both chemistry and reading, contends that she was suspended despite the fact that she could have been

---

[1] We note that although the majority opinion refers to two entities, the Sharon City School Board and the Sharon City School District, only the Sharon City School District is a party.

realigned into a reading position. The reading position was held by a less senior employee who was teaching reading at the elementary school level to educationally disadvantaged students. She asserts that her suspension violates Section 1125.1(c) of the Public School Code of 1949[2] (Code) which provides that:

> A school entity shall realign its professional staff so as to insure that more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees.

The majority opinion interprets this section to restrict the School District's criteria for suspensions in a realignment case solely to seniority. Since Grunenwald was more senior, the majority has ordered her reinstatement despite the opinion of the Superintendent of the School District that it would be educationally unsound to effectuate such a transfer.

The result of the majority's decision is, that whenever a school district realigns its staff, senior teachers and administrators will have the right to choose to fill any position for which they are certificated and which is being filled by an employee with less seniority. The essence of this result is that whenever a realignment is necessary, employees with greater seniority will be able to "bump" less senior employees in order to suit the senior employee's desires without any regard to the overall impact on the school district or the other professional staff. Furthermore, the school district will be powerless to take into consideration other legitimate concerns, such as the amount of experience a teacher may have in teaching a given subject, or to insure that the least senior employees of the district are the ones

---

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1125.1.

who will be suspended where a staff reduction is necessary.

Requiring seniority to be the sole criterion also leads to the result that those employees who are not at the very top of the seniority totem pole will lose the job security which the legislature intended to insure by the tenure provisions of the Code. A tenured teacher could be "bumped" by a more senior employee; these employees are then stripped of the protection heretofore afforded by the school district's authority to monitor the overall impact of the realignment.

Section 1125.1(c) does not mandate that these employees shall have the absolute *right* to fill *any* position for which they are certificated and which are being filled by less senior employees. It merely states that more senior employees are to be given the "opportunity to fill positions for which they are certificated. . . ." The School District has discretion to define what "opportunities" are available. However, the School District must first give consideration to providing opportunities to more senior employees to fill positions in which they are certificated while considering the practical effects and overall efficiency[3] of a realignment plan.

Further, the School District is not required to consider the seniority of all professional employees in both the elementary and secondary school systems when it determines the order of suspensions resulting in a decline in student enrollment. *Sto-Rox School District v. Horgan,* 68 Pa. Commonwealth Ct. 416, 449 A.2d 796 (1982). Since Grunenwald was a secondary school teacher and the position to which she sought reinstatement was in elementary education, realignment is

---

[3] The Pennsylvania Constitution, Article 3 §14 imposes on the legislature the duty to ". . . provide for the maintenance and support of a *thorough* and *efficient* system of public education to serve the needs of the Commonwealth." (Emphasis added.)

not required by Section 1125.1. *James v. Big Beaver Falls Area School District,* 98 Pa. Commonwealth Ct. 319, 511 A.2d 900 (1986).

The School District did not violate Section 1125.1(c) of the Code by suspending Grunenwald. It was within their discretion to consider the fact that Grunenwald, a secondary education teacher, had been teaching chemistry for ten years and that the Superintendent considered her transfer to the elementary education reading position to be educationally unsound.

Accordingly, I would reverse the order of the trial court insofar as it orders the reinstatement of Grunenwald.