550 A.2d 1379

Wattsburg Area School District, Appellant *v.* Suzanne Jarrett, Appellee.

Argued March 21, 1988, before Judges CRAIG and SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Christine Hall McClure, McClure, Dart, Miller, Kelleher & White,* for appellant.

*John J. Barber,* with him, *George Levin,* for appellee.

OPINION BY JUDGE SMITH, December 5, 1988:

The instant matter is presently before this Court pursuant to an order of the Pennsylvania Supreme Court which reversed a prior decision by this Court and remanded the record for disposition of issues related to the two alternate grounds for the trial court's reversal of the Wattsburg Area School Board's decision to suspend Appellee Suzanne Jarrett (Jarrett).[1] The decision of the trial court is affirmed.

The factual background is not in dispute and has been fully recited in prior decisions by this court and the Supreme Court. The following, however, is a brief summarization. Jarrett was hired by the Appellant, Wattsburg Area School District (School District), in 1974 as a guidance counselor. She was certified by the Department of Education as a guidance counselor but not as a teacher. James Tonks (Tonks) was hired by the School District in 1971 as a teacher of Spanish and driver education. In 1976, Tonks completed course

---

[1] *Jarrett v. Wattsburg Area School District,* 516 Pa. 555, 533 A.2d 1008 (1987); *Wattsburg Area School District v. Jarrett,* 99 Pa. Commonwealth Ct. 569, 513 A.2d 588 (1986).

work for certification as a guidance counselor but did not apply for certification at that time.

Reductions in the professional staff were made by the School District for the school year 1983-1984 due to a decline in student enrollment in the driver's education program. As other certified teachers were available to teach the reduced driver education classes and to assume Tonks' Spanish classes, he consequently became a candidate for furlough.[2]

Upon learning of his possible furlough, Tonks applied to the Department of Education for a guidance counseling certificate which was granted on June 24, 1983. On May 16, 1983, the superintendent, in anticipation of Tonk's certification, recommended that Jarrett be suspended because she was less senior than Tonks. As a result, Jarrett was suspended by the Board effective August 29, 1983, at the beginning of the 1983-1984 school year. Jarrett was notified of the Board's action by letter dated May 17, 1983 and that her benefits would continue through August 28, 1983.

---

[2] Section 1124(3) of the Public School Code of 1949 (School Code) provides in pertinent part for the suspension of professional employees as follows:

> Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:
>
> . . . .
>
> (2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization on educational activities required by law or recommended by the Department of Public Instruction.

Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1124(3).

After hearing on the proposed furlough, the School Board upheld Jarrett's suspension which she appealed to the Erie County Court of Common Pleas. The trial court relied upon *Penzenstadler v. Avonworth School District*, 43 Pa. Commonwealth Ct. 571, 403 A.2d 621 (1979), and determined that the reassignment of Tonks to Jarrett's position was contrary to the School Code as Tonks was not certified in guidance counseling at the time of the School Board's decision. Further, the decision to retain Tonks improperly anticipated certification by the Department of Education.

The trial court held that Jarrett's suspension was improper for two other reasons. First, that the School District placed higher priority on placing Tonks than on the educational and practical implications of its decision; and, secondly, that even if the original decision were correct, the School District should have returned Jarrett to her position after July, 1983, when an alternative education program position became available to which Tonks could have been assigned.[3] The trial court consequently reversed the School Board and directed that Jarrett be reinstated as guidance counselor.

The School District appealed to this Court which affirmed the trial court and held that a school board is required to rely only upon the record of certification as provided by the superintendent at the time of suspension.[4] This Court, however, did not consider the two al-

---

[3] In the summer of 1983, a new position was created in the alternative education program. It required a teaching certificate which Appellee did not have. Tonks was qualified, however, to teach in that program.

[4] On appeal from a local agency decision, this Court must determine whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

ternate grounds for the trial court's reversal of the School Board.

Thereafter, upon appeal by the School District, the Supreme Court, in reversing this Court and remanding the record, held that the trial court's reliance upon *Penzenstadler* was misplaced and that in determining whether a teacher is certified for a particular position, the school board must look to the date suspension is to take effect rather than the date of the board's decision. Since both Tonks and Jarrett were certified in guidance counseling as of the date of Jarrett's suspension and Tonks was more senior, Jarrett's suspension was therefore in accordance with the School Code. The Supreme Court, however, remanded to this Court to dispose of issues related to the two other grounds for the trial court's decision. Those remaining issues are now before this Court.

To furlough any tenured school teacher, Section 1125.1 of the School Code requires, in pertinent part, the following:

### Persons to be Suspended

(a)  Professional employes shall be suspended under Section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

. . . .

(c)  A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill

positions for which they are certificated and which are being filled by less senior employes.[5] Section 1125.1(c) has been interpreted to require seniority as the sole criterion in determining whether a teacher qualifies for furlough. In *Godfrey v. Penns Valley Area School District,* 68 Pa. Commonwealth Ct. 166, 449 A.2d 765 (1982), this Court adopted the trial court's opinion and affirmed its decision to displace the least senior member of the music department where the trial court recognized that no basis existed for mandating an alternative realignment because the complaining teacher's certificate was different from that of the individual whose displacement he sought through realignment. The trial court noted, however, that "the practicality of such realignment and its effect on the educational process within the school district must be considered." *Id.* at 167, 449 A.2d at 769. In *Dallap v. Sharon City School District,* 105 Pa. Commonwealth Ct. 346, 524 A.2d 546 (1987), actions were brought regarding a program of realignment of public school teachers. This Court held that seniority was the sole criterion for suspension in a realignment case and that experience was not necessary but certification, however, was required. A dissenting opinion in *Dallap* dealt with the practical implications of holding it unnecessary for a teacher to have experience in the field to which the teacher may be realigned.

The question of experience, as well as seniority, as a criterion for suspension was raised in *Gibbons v. New Castle Area School District,* 93 Pa. Commonwealth Ct. 28, 500 A.2d 922 (1985). There, the school district's board of directors reassigned a junior high school principal to a position as an assistant high school principal

---

[5] Added by Section 3 of the Act of November 20, 1979, P.L. 465, *as amended,* 24 P.S. §11-1125.1

when one of the district's junior high schools was closed and schools were consolidated. The school district retained an administrator with less seniority than the senior high school principal and the reassigned principal appealed. This Court held that reassignment based upon consideration of superior experience violated the School Code provision mandating that realignment be based solely upon seniority. On appeal, the Supreme Court reversed the order of this Court and held that:

> Section 1125.1 like its predecessor, established a legislative policy on how school districts are to reduce staff while protecting the job security interests of tenured professional employees. It would give undue weight to the seniority preference of subsection (c) which is only a constituent part of this policy, to remove it from this context and treat it as an overarching statement of the primacy of seniority in the placement of professionals generally. Nothing about Act 1979-97 indicates that it was intended to alter the longstanding statutory grant of discretion to school boards to appoint professional staff on the basis of the educational needs of the district, *see* 24 P.S. §5-508, beyond requiring that the diminishment of professional employees' status be accomplished according to seniority.

*Gibbons v. New Castle Area School District*, 518 Pa. 443, 448, 543 A.2d 1087, 1089 (1988). The Supreme Court thus rejects the narrow interpretation of 24 P.S. §1125.1(c) that seniority is the sole criterion in realignment and adopts the dictum of *Godfrey* that the impact of realignment on the educational process is a valid consideration for the school board.

Applying the rationale in *Gibbons* to the present situation, it becomes apparent that the School District's decision to furlough Jarrett was improper. Although

Tonks and Jarrett were certified in guidance counseling as of the date Jarrett's suspension was to take effect, Tonks had no experience in the field and took course work in guidance counseling more than seven years previously. On the other hand, Jarrett possessed nine years of experience as a guidance counselor. Moreover, since a new position was created in the alternative education program which Tonks was qualified to fill, Tonks could have been reassigned to that position while Jarrett retained her guidance counselor position.

Nor is there any merit to the argument advanced by the School District that the trial court adopted an alternate realignment plan contrary to Section 1125.1(c) of the School Code. The School District argues that placing Tonks in the alternative education program would have been considered a demotion and the School District would have been faced with a demotion hearing. In this regard, however, the trial court noted in its opinion:

> The fact of the matter is, Tonks did not begin acting as guidance counselor until August 23, 1983, nearly one month after the alternate education position opened. Contrary to the superintendent's assertion, nothing in the record supports the conclusion that Tonks would have suffered a reduction in pay. Even so, it is impossible for the superintendent to weigh the relative merits of a demotion hearing and a suspension hearing.

*Jarrett v. Wattsburg Area School District,* (No. 4912-A-1983, filed September 21, 1984), slip op. at 5-6. Since Tonks was not the guidance counselor, he obviously could not be demoted by being placed in the alternate education program. Thus, there is no basis for the assertion by the School District that it would have faced a demotion hearing. Furthermore, placing Tonks in the alternative education program would be consistent with

the intent of Section 1125.1(c) in that the most senior teachers be furloughed last.

Accordingly, the decision of the trial court is affirmed.

ORDER

AND NOW, this 5th day of December, 1988, the decision and order of the Court of Common Pleas of Erie County is affirmed.

Judge MACPHAIL did not participate in the decision of this case.