571 A.2d 368

Jan DALLAP, Sharon Cunningham, Betty Yohman, Les Cattron, Tom Ristvey, Sally Fabian, Michelle Grunenwald, Ruth Lavin, Shirley Antos, Sheila Schneider, Ann Dunsmore, Chris Carney, Bonnie Flower, Barbara Pisarcik, Dennis Shaw, individual tenured teachers, Appellants,

v.

SHARON CITY SCHOOL DISTRICT, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 26, 1989.

Decided March 12, 1990.

Daniel R. Delaney, Laubach, Fulton, Jeselnik, & Delaney, Pittsburgh, Pa., for appellants.

Mark P. Widoff, Harrisburg, amicus curiae, for Pennsylvania State Educ. Ass'n.

William G. McConnell, Cusick, Madden, Joyce and McKay, Sharon, for appellee.

Stephen S. Russell, Chief Staff Counsel, New Cumberland, amicus curiae, for Pennsylvania School Boards Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

The appellants in this case are teachers suspended by the Sharon City School District, effective at the close of the 1981–82 school year, due to declining enrollment.[1] The question is whether the School Board committed an error of law in suspending these teachers while retaining another, or others, with less seniority. For the reasons that follow, we reverse the order of the Commonwealth Court and remand to the Court of Common Pleas of Mercer County for further proceedings. 105 Pa.Cmwlth. 346, 524 A.2d 546.

All agree that the applicable law is found in Section 1125.1 of the Public School Code, Act of March 10, 1949, as amended, 24 P.S. § 11–1125.1.

> A school entity shall realign its professional staff so as to insure that more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees.

---

1. This action originally contained a challenge, on behalf of all teachers suspended, to the Board's determination that declining enrollment necessitated the furlough of professional employees. This claim was apparently not pursued in the common pleas court. Also, several of the teachers listed for suspension at the end of the 1981–82 school year were in fact recalled to their positions before the start of the 1982–83 school year. For these reasons, not all parties named in the caption remain as parties to this appeal. The Brief of Appellants identifies Dallap, Cunningham, Yohman, Cattron, Ristvey, Fabian, and Grunenwald as viable appellants, although the orders of the lower courts would indicate that Grunenwald has already obtained relief on separate grounds, and the Board was denied allowance to appeal.

At issue is the extent to which this statute allows school boards to exercise discretion to consider the "educational soundness" of particular personnel moves and reject those realignments deemed to be unsound. We have recently had several occasions to examine similar questions arising out of this statute.

In *Gibbons v. New Castle School District,* 518 Pa. 443, 543 A.2d 1087 (1988), the complainant was a junior high school principal who was appointed assistant principal of the high school when one of the district's junior high schools was closed. The high school principal had less seniority in the district than Gibbons. We held that this realignment did not violate Section 1125.1(c). Gibbons was not suspended while a less senior employee remained in a position Gibbons was certified to hold; he was retained in an administrative position with no loss in pay. We stated that

"Section 1125.1 operates to allocate only the *adverse* effects of employment changes in order of seniority from least to greatest, allowing, even requiring if necessary, a more senior employee to 'bump' a less senior one of equal or lesser status. It is beyond the purpose of that section, however, to require a professional to be promoted or advanced in status. By returning the two administrators with least seniority to teaching positions, and giving Gibbons the opportunity to fill one of the positions thus vacated, the board fully complied with Section 1125.1(c)."

518 Pa. at 449–50, 543 A.2d at 1090. (Emphasis in original). We also observed that school boards have discretion to appoint principals according to the educational needs of the district and are not limited to appointing only the most senior persons certified to hold the position. We found that it would be unreasonable to read Section 1125.1(c) as requiring the latter result when the district found it necessary to realign its staff. See 518 Pa. at 449, 543 A.2d at 1090.

In *Duncan v. Rochester Area School District,* 524 Pa. 254, 571 A.2d 365 (1990), decided this same day, the school board eliminated an administrative position and, pursuant to

Section 1125.1(c), returned the administrator to a teaching position for which he was certified. Duncan was least senior in his department and thus suspended as a result of the administrator's placement there. He argued that Section 1125.1(c) required that the administrator be placed in a different area of certification, where there was an employee less senior than Duncan to be suspended. We held, however, that the statutory language

> says no more than that an employee, on the basis of his own multiple certifications, can displace a less senior employee. It does not require the school to take note of all multiple certifications in order to retain the most senior employees. Nor does it give individual employees the right to require that others make such displacements.

524 Pa. at 256–257, 571 A.2d at 366. We implicitly acknowledged that the board's discretion to place the administrator as it deemed best while accommodating his seniority interests was not circumscribed by Section 1125.1(c) to the extent that consequent displacements had to result in furlough of the least senior employee possible.

■ To summarize, in undertaking a realignment prompted by declining enrollment, school districts have no choice but to to replace less senior employees with more senior ones who carry proper certification. Where circumstances admit of more than one possible realignment, however, the district may consider the impact of each on the educational program to determine which is most sound, so long as within the chosen plan "more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employees."

In this case, Dallap, Cunningham, Yohman, Cattron, Ristvey, and Fabian all had greater seniority in the District than Vicki Lingner, coordinator of the program for gifted students. This position, which required no special certification, involved little, if any, instruction. Rather, the coordinator designed, organized, and implemented independent instructional experiences for students with special aptitudes. Be-

cause Lingner had been involved with the gifted program from its inception, and because of her breadth of experience with the arts and humanities and her ability to develop interaction between students and talented people within the community, the superintendent considered it educationally unsound and disruptive to realign one of the more senior employees into her position.

In support of the orders below, the district argues that Section 1125.1(c) is a codification of *Welsko v. Foster Township School District*, 383 Pa. 390, 119 A.2d 43 (1956). That case, according to the district, recognized that under the predecessor Section 1125, the educational soundness of realignment could be considered to temper the requirement to suspend on the basis of seniority.

We do not find this interpretation of the statute or the case law to be persuasive. At the time *Welsko* was decided, the Tenure Act provided that except where there were substantial differences in ratings, a point not in issue, professional employees were to be retained on the basis of seniority rights. We held that the school district erred in dismissing the least senior teacher of a particular subject, when teachers with even less seniority could have been dismissed if members of the remaining staff were assigned to their duties. (When the legislature repealed this section of the Tenure Act and adopted the present Section 1125.1, the realignment it required to accommodate seniority rights was not so extensive as we had imposed by our decision in *Welsko*. See *Duncan.*) Although in passing we affirmed the view first stated in *Ehret v. Kulpmont School District*, 333 Pa. 518, 5 A.2d 188 (1939), that the Tenure Act was not intended to interfere with control of school policy and selection of courses of study, we found that applying the seniority provision in such a way did not present such interference.[2] It is simply incorrect to say that *Welsko*

---

**2.** In *Ehret*, we affirmed the school board's decision to furlough the kindergarten teacher after discontinuing the kindergarten program for insufficient enrollment. We rejected the teacher's claim that the Tenure Act prohibited such a suspension and required that she be retained even if her services were not used. We found that such a

recognized that a school board's assessment of educational practicality could override the legislative requirement that teachers be retained on the basis of seniority.

We also reject the argument that the legislature's amendment of the statute in 1986, without responding to Commonwealth Court rulings allowing for consideration of educational soundness, constituted acquiescence in the correctness of those interpretations of the statute. The presumption referred to applies only where a court of last resort has construed the language used in a statute. 1 Pa.C.S. § 1922(4). At the time of the 1986 amendments, this Court had not spoken to the meaning of Section 1125.1, the language of which differed from the statutory language construed in *Welsko*.

Although the coordinator's position is characterized by a substantial degree of supervisory or administrative work, we do not accept the argument advanced by *amicus* Pennsylvania School Boards Association, that *Gibbons* is controlling in that the appellant teachers are in effect seeking a promotion, which is beyond the scope of Section 1125.1(c) to require. In that case, it will be recalled, though he was not assigned to the particular position he wanted (which was filled by someone less senior), the complaining employee was, in fact, given an opportunity to fill a position for which he was certified and a less senior employee was bumped. Here, the complaining employees were furloughed while a less senior employee was retained in a position for which their certification was sufficient.

■ Neither do we accept the inference contained in the opinion of the court below that Section 1125.1(c) is inapplicable because the coordinator's position does not require certification. Elsewhere in the Public School Code the legislature has provided that "[n]o person shall teach [meaning "to engage in the practice of teaching ... *or to provide related educational specialist, administrative or*

reading of the Tenure Act conflicted with the overall intent of the School Code and the discretion vested in school boards regarding such decisions.

*supervisory services* "] in a public school in the Common-wealth unless he has met the certification requirements as established by the State Board of Education...." Act of December 12, 1973, P.L. 397, No. 141, § 2, 24 P.S. § 12–1252, [§ 12–1251]. (Emphasis added). Thus, it is apparent that the position does require certification, i.e., the minimum certification necessary to teach in the school system. The superintendent acknowledged as much in his testimony. It is true that no special certification distinguishes those eligible to hold the coordinator's position from those eligible to hold other teaching positions, as a certification in mathematics distinguishes those who may teach that subject from those certified and eligible to teach another subject. Lingner was eligible to hold the position because she was certified; it happened that her certification was in English, but it could as well have been in mathematics, science, physical education, or any other field. In most cases, it would seem, there is a correspondence between position and certification. The statute, however, is not so narrowly drawn as to exclude from its reach those positions that do not so easily correspond to a subject or field of certification. If a position exists and an employee's certification enables him to fill that position, he must be given the opportunity to do so by displacing the less senior employee.

■ We recognize the serious policy arguments weighing against the result that follows from this reading of the statute. At best, certification is but a rough indicator of a professional employee's ability to perform in a given area. It perhaps becomes even less meaningful as length of service increases and employees "specialize" in one area of certification to the exclusion of others, though never losing certification in those latter areas. The disparity is even more acute in a situation such as this, where certification is but a minimum requirement for a position, individualized talents and experiences being more significant to the success of the program. The benefit of giving school districts discretion to make *appointments* on the basis of persons'

qualifications is limited by a requirement that *retentions* be based entirely on seniority and certifications.

Nevertheless, for reasons that themselves are not insignificant, the legislature has deemed it appropriate to require school boards to rely only on certification in determining whether an employee may survive reductions in force. It cannot be forgotten that these reductions occur in the "extra-ordinary" context of substantial decrease in pupil enrollment, perhaps accompanied by curtailment or alteration of the educational program. See 24 P.S. § 11–1124(1), (2). This method protects long-tenured employees, who carry greater salaries, from removal simply to save the district a greater amount of money, while providing an obvious incentive for employees to broaden their professional abilities. Further, it is not clear that there are a significant number of positions like the one at issue here, where the job requirements differ to such a degree from the minimal certification necessary. In this regard, any disruption to the district's program caused in this case by adherence to Section 1125.1(c) may be sui generis. And we note that school districts are not without options to garner greater flexibility in making such decisions. See 24 P.S. § 11–1125.1(e) (collective bargaining agreement may supersede other requirements of Section).

Having determined that the school district erred in its application of the law, we must reverse the orders entered below. It would be inappropriate, however, for this Court to determine the form of relief. More than seven years have passed since the suspensions were first ordered. If the circumstances in this case, as reflected in the record of the hearing before the Board, are at all typical, much may have changed in those years. In the short space of the few months between the announcement of the suspensions and the hearing, two of the teachers scheduled for furlough were recalled and another was likely to be recalled before the start of the school year; others may have secured employment elsewhere. Thus an order of reinstatement may be impractical, and the most that may be appropriate is

a monetary award for lost wages. Neither are we in a position to determine which of the employees ought to have been retained under proper application of Section 1125.1(c). Obviously, only one of the appellants whose certifications permitted them to fill Lingner's position could have done so. Dallap appears to be the most senior and thus relief might be appropriate as to her alone. Common pleas court, however, after holding hearings if necessary, is better situated to determine which of the parties is entitled to relief and what form that relief should take.

The order of the Commonwealth Court is reversed. The case is remanded to the Court of Common Pleas of Mercer County for further proceedings consistent with this opinion. Jurisdiction relinquished.

LARSEN, J., files a concurring and dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, concurring and dissenting.

Although I agree with the majority that the order of Commonwealth Court upholding the suspensions of the appellant teachers herein who had more seniority than others with the same certification must be reversed, I object to the attempt of the majority to read into section 11–1125.1 of the Public School Code, Act of March 10, 1949, as amended 24 P.S. § 1125.1, any intention on the part of the Legislature to permit school administrators to continue to exercise discretion in the realignment of professional staff. *See Duncan v. Rochester Area School Board*, 524 Pa. 254, 571 A.2d 365 (1990) (Larsen, J., dissenting); *Gibbons v. New Castle Area School District*, 518 Pa. 443, 543 A.2d 1087 (1988) (Larsen, J., dissenting).

In addition, I strenuously object to the "relief" provided by the majority, and I would order the reinstatement with back pay of those teachers improperly suspended. There is simply no reason or precedent for penalizing these litigants

any further, especially in view of the fact that the delay was caused by the "system."

PAPADAKOS, J., joins this concurring and dissenting opinion.