### Janet BORIS

v.

### SAINT CLAIR SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1995.

Decided Dec. 6, 1995.

Michel A. O'Pake, for appellant.

Charles L. Herring and A. Martin Herring, for appellee.

Before DOYLE and NEWMAN, JJ., and MIRARCHI, Senior Judge.

DOYLE, Judge.

The Saint Clair Area School District (School District) appeals from an order of the Court of Common Pleas of Schuylkill County, which reversed the decision of the Board of School Directors (School Board) to demote Janet Boris from her position as a full-time teacher to a position as a half-time teacher.

The relevant facts underlying this case are not in dispute and are summarized as follows. Boris is a professional employee of the School District, currently employed to teach home economics on a part-time basis. However, from August 13, 1985, the date Boris was originally hired, until the beginning of the 1992–93 school year, Boris was a full-time employee of the School District. Prior to the 1989–90 school year, she taught classes in home economics to both high school and middle school students.

Prior to the 1989–90 school year, the School Board negotiated an agreement with the Pottsville Area School District under which students in grades nine through twelve from the Saint Clair Area School District would attend high school in Pottsville. Following that arrangement, on March 21, 1989, the School Board voted to demote Boris to a part-time position due to declining enrollment resulting from the agreement. However, as a result of litigation initiated by the St. Clair Area Education Association, the School District was forced to rescind the demotion of Boris.[1] Subsequently, a settlement agreement was reached between the School District and the Education Association. Under the terms of the settlement agreement, Boris was guaranteed full-time employment through the 1991–92 school year.[2] Although

---

1. By an order of this Court dated August 25, 1989, the School District was ordered to rescind any furloughs or demotions of teachers and administrators resulting from its agreement to "tuition-out" students pending the outcome of the appeal by the St. Clair Area Education Association. Subsequently, the School District, through an agreement with the St. Clair Area Education Association, was able to proceed with its plans to "tuition-out" high school students to the Pottsville Area School District. However, due to de-

lays caused by the litigation, the School District was not able to fully implement this plan until the 1991–92 school year.

2. For the 1989–90 school year, Boris was on maternity leave and did not teach. For the 1990–91 and 1991–92 school years, Boris taught home economics to middle school students; she also taught one semester of home economics to

the School District no longer had a need for a full-time home economics teacher, it was able to assign her extra administrative and teaching duties in order to provide her with a full-time schedule.

After the 1991–92 school year, the School Board once again voted to demote Boris to half-time employment. Boris requested a hearing before the School Board at which time she alleged that the School Board's decision was arbitrary and capricious, and that, by demoting her in favor of less senior professional employees, the School Board had failed to properly realign its professional staff as required under Section 1125.1 of the Public School Code of 1949 (School Code).[3]

In support of her allegations, Boris presented evidence which established that an-

other teacher, Mr. Nemits,[4] was retained as a full-time teacher even though he had less seniority than Boris. Boris concedes that Nemits was certified to teach industrial arts while she was only certified to teach home economics. Nevertheless, due to the decline in the School District's enrollment, there was no longer a need for a full-time industrial arts teacher.[5] In order to retain Nemits as a full-time teacher, the School District assigned him additional duties which did not require certification in any special subject area.[6] Although Boris is not qualified to teach industrial arts, she is fully qualified to perform the additional duties which were assigned to Nemits. Boris argued that since Nemits was hired after her, those additional duties should have been assigned to her,

high school students during the 1991 Spring semester.

3. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 11–1125.1. Section 1125.1 provides:

(a) Professional employes shall be suspended under section 1124 (relating to causes for suspension) in inverse order of seniority within the school entity of current employment. Approved leaves of absence shall not constitute a break in service for purposes of computing seniority for suspension purposes. Seniority shall continue to accrue during suspension and all approved leaves of absence.

(b) Where there is or has been a consolidation of schools, departments or programs, all professional employes shall retain the seniority rights they had prior to the reorganization or consolidation.

(c) *A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.*

(d)(1) No suspended employe shall be prevented from engaging in another occupation during the period of suspension.

(2) Suspended professional employes or professional employes demoted for the reasons set forth in section 1124 shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is such a suspended or demoted professional employe available who is properly certificated to fill such vacancy. For the purpose of this subsection, positions from which professional employes are on approved leaves of absence shall also be considered temporary vacancies.

(3) To be considered available a suspended professional employe must annually report to the governing board in writing his current

address and his intent to accept the same or similar position when offered.

(4) A suspended employe enrolled in a college program during a period of suspension and who is recalled shall be given the option of delaying his return to service until the end of the current semester.

(e) Nothing contained in section 1125.1(a) through (d) shall be construed to supersede or preempt any provisions of a collective bargaining agreement negotiated by a school entity and an exclusive representative of the employes in accordance with the act of July 23, 1970 (P.L. 563, No. 195), known as the "Public Employe Relations Act;" however, no agreement shall prohibit the right of a professional employe who is not a member of a bargaining unit from retaining seniority rights under the provisions of this act.

(f) A decision to suspend in accordance with this section shall be considered an adjudication within the meaning of the act known as the "Local Agency Law." (Emphasis added.)

4. Nemits' full name does not appear anywhere in the record.

5. The industrial arts program and the home economics program were coordinated with each other so that all students had the same amount of class time in each subject area. Every regular class section was divided into two groups, with one-half assigned to industrial arts and one-half assigned to home economics. At the end of the semester, the two groups would switch subject areas. Consequently, Boris and Nemits had exactly the same teaching load in their area of certification.

6. These duties included assisting with attendance; monitoring study hall, lunch duty, activity period, and project make-ups; and teaching a life skills class.

instead of Nemits, in order to allow her to retain full employment with the School District. Boris concluded that by demoting her rather than Nemits, the School District violated Section 1125.1 of the Code which requires that school districts realign their professional staff in such a manner that a more senior employee is not demoted in favor of a less senior employee, provided that both employees are qualified to perform the required duties of the position.

The School Board rejected Boris' argument and upheld her demotion to a half-time position in a decision dated December 1, 1992. In reaching this decision, the School Board found that the School District was justified in demoting Boris, instead of Nemits, because it is much more difficult to find qualified individuals to teach industrial arts on a part-time basis than it is to find qualified individuals to teach home economics on a part-time basis. The School Board further found that for the purposes of the School Code, its action against Boris constituted a "demotion" under Section 1151 of the School Code [7] since it involved a reduction in pay and a change in type of position. Therefore, the Board concluded, Boris had not been "suspended" as defined under Section 1124 of the School Code,[8] and was not entitled to preferential treatment based on seniority.

Boris subsequently appealed the School Board's decision to the Secretary of Education on the grounds that the School Board's decision was arbitrary and capricious.[9] Concurrently, Boris also appealed the School Board's decision to the Court of Common Pleas of Schuylkill County since she believed that the court of common pleas might actually have jurisdiction over some, if not all, of the issues raised in her appeal. By an order dated June 28, 1993, the Secretary of Education upheld the decision of the School Board to demote Boris as being neither arbitrary nor capricious, finding that the decision was based on legitimate factors relating to decreasing enrollment. However, the Secretary of Education specifically declined to rule on whether the School District should have considered her seniority when deciding to demote her, rather than Nemits, since the Secretary of Education "does not have jurisdiction over the issue of seniority and realignment."[10] (Opinion of Secretary of Education at 5.)

Subsequently, the court of common pleas found that it had jurisdiction over the question of whether the School District had properly realigned its employees when it demoted Boris in favor of Nemits, an employee with less seniority. Although the court of common pleas agreed with the Secretary of Education that the School District was justified

7. 24 P.S. § 11–1151.

8. 24 P.S. § 11–1124. Section 1124 of the School Code states:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, ..., as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes.

(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

Id. (Footnote omitted.)

9. Boris additionally argued that the School Board's decision violated her due process rights, since the School Board had improperly commingled its prosecutorial and adjudicatory functions in reaching its decision. However, the Secretary of Education summarily dismissed this argument since the School Board's decision was subject to de novo review, and thus, any prejudice from the alleged commingling of functions was cured.

10. The Secretary of Education noted that ordinarily he would have transferred the case to the court of common pleas for the disposition of those issues which he lacked jurisdiction to decide. However, since Boris already had an appeal pending before the court of common pleas, it was unnecessary to do so in this case.

in demoting someone, it concluded that the School District's action violated the seniority provisions of Section 1125.1 of the School Code. Therefore, by an order dated January 20, 1995, the court of common pleas reversed the decision of the School District and ordered that Boris be reinstated with back pay to her previous position as a full-time professional employee.

The School District appeals from the decision of the court of common pleas to our Court. On appeal, the School District raises two issues: (1) whether the court of common pleas had jurisdiction to consider the merits of this case; and (2) whether the School District's decision to demote Boris to half-time status, rather than a less senior employee, was an arbitrary, capricious or otherwise unlawful act in violation of the School Code.

The School District first argues that its action towards Boris constituted a "pure demotion," and as such, is solely reviewable by the Secretary of Education under Section 1151 of the School Code. Section 1151 provides in pertinent part:

> [T]here shall be no demotion of any professional employee either in salary or in type of position, except as otherwise provided in this act, without the consent of the employee, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and *an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.*

24 P.S. § 11–1151 (emphasis added). A dismissed professional employee's sole avenue of appeal is to the Secretary of Education, and not the court of common pleas, under Section 1131 of the School Code.[11] The School District argues that under the plain language of Section 1151 of the School Code, a professional employee who is demoted is also required to file his or her appeal of that decision to the Secretary of Education. Therefore, the School District concludes, the court of common pleas lacked jurisdiction in this case and its decision must be reversed.

Boris, though, argues that the court of common pleas does have jurisdiction in this case because the School Board's action was not simply a "demotion," but was in the nature of a suspension and involved questions concerning the realignment of the School District's professional staff. Section 1125.1(c) of the Code mandates that a school district "shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes." 24 P.S. § 11–1125.1(c). Although we agree with the School District that demotion decisions are generally reviewable only by the Secretary of Education, we have previously held that demotions which occur as a result of the realignment of a school district's professional staff are appealable directly to the court of common pleas. *Shestack v. General Braddock Area School District,* 63 Pa.Cmwlth. 204, 437 A.2d 1059 (1981). Furthermore, it is irrelevant whether the challenged action actually constitutes a "suspension" so long as it was carried out as part of a realignment of the school district's professional staff.[12] *Id.*

■ In *Hritz v. Laurel Highlands School District,* 167 Pa.Cmwlth. 353, 648 A.2d 108 (1994), *petition for allowance of appeal denied,* 540 Pa. 634, 658 A.2d 797 (1995), we recently explained the factors which must be considered when determining whether the realignment provisions of Section 1125.1 of the School Code apply to a demotion as follows:

> In order for a demotion to constitute a "realignment-demotion," the demotion

---

11. 24 P.S. § 11–1131.

12. While Section 1125.1(f) of the School Code specifically provides that a decision to *suspend* a professional employee is an adjudication which may be appealed to the court of common pleas pursuant to the Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754, there is no specific procedure contained in the School Code for appealing demotion decisions which involve the issues of realignment and seniority under Sections 1124 and 1125.1 of the School Code, 24 P.S. §§ 11–1124, 11–1125.1. Nonetheless, where no other procedures are specified in the School Code, a person challenging an adjudication has the right to appeal to the court of common pleas under the Local Agency Law. 2 Pa.C.S. § 752; 42 Pa.C.S. § 933(a)(2). *See Rike v. Secretary of Education,* 508 Pa. 190, 494 A.2d 1388 (1985); *Shestack.*

must be (1) due to one of the enumerated reasons provided in Section 1124 of the Code,[13] such as declining enrollment or the closing of a school, and (2) involve some sort of regrouping or reorganization of duties of other professionals within the district beyond simply the abolishment of a single position resulting in the demotion of one person.

*Id.*, 648 A.2d at 111 (citation omitted). In the present case, the court of common pleas found that Boris was demoted as a result of the School District's reorganization following its decision to discontinue its own high school program and "tuition-out" its high school students. While the School District attempts to characterize Boris' demotion as being an isolated decision, unrelated to the School District's overall reorganization plan, we simply cannot separate the School District's action against Boris from the massive reorganization which the School District undertook from 1989 through 1992. The record clearly demonstrates that the School District's reorganization affected many of the District's professional employees, not just Boris. Since Boris' demotion did result from the reorganization of the School District and the realignment of its professional staff, we find that it was a "realignment-demotion" and was subject to review under Section 1125.1 of the School Code. Therefore, the court of common pleas did have jurisdiction in this case.

The School District's second argument is that even if the court of common pleas had jurisdiction, its decision approving the demotion of Boris to half-time employment was lawful and must be upheld. The School District argues that there was a significant decline in enrollment which made it necessary to demote some of its professional employees. The School District further maintains that since Boris and Nemits did not share the same field of certification, it was not required to apply principles of seniority under Section 1125.1 of the Code when it decided to demote

her. Therefore, the School District concludes that its decision was neither arbitrary nor capricious, but instead was based exclusively on legitimate factors relating to the School District's decreasing enrollment and the resulting lack of need for a full-time home economics teacher.

We disagree with both the School District's analysis and its conclusion concerning this issue. Although Boris and Nemits did not share the same field of certification, both were in fact qualified to perform the additional duties which Boris wishes to have assigned to her. We also note that while no special area of certification is required to perform these additional duties, a significant amount of these duties do require a general teaching certificate of some sort. Therefore, the duties in question are not simply administrative or clerical functions, such as lunch or bus duty, which could be performed by non-professional employees.

In *Dallap v. Sharon City School District*, 524 Pa. 260, 571 A.2d 368 (1990), the Pennsylvania Supreme Court held that a school district could not retain the coordinator of its program for gifted students, no matter what special talents she might possess, if there was another teacher having greater seniority who had been suspended from his or her position. Like in the present case, the position in *Dallap* did not require special certification, but rather, required only a general teaching certificate in some subject area. Also, the Supreme Court specifically rejected the argument that strict adherence to the requirements of Section 1125.1 does not adequately account for the overall educational needs of individual school districts.[14] *Id.* In reaching its decision, the Supreme Court summarized the obligation of school districts to realign their professional staff on the basis of seniority as follows:

[I]n undertaking a realignment prompted by declining enrollment, school districts have no choice but to replace less senior

**13.** For the provisions of Section 1124 of the School Code, 24 P.S. § 11–1124, see *supra* note 8.

**14.** Although recognizing the strong policy arguments which supported the school district's position, the Supreme Court refused to alter the

strict seniority provisions of Section 1125.1 of the Code since it was the legislature's prerogative to make the determination that long-tenured professional employees should be afforded a high level of job security. *Dallap.*

employees with more senior ones who carry proper certification.... If a position exists and an employee's certification enables him to fill that position, he must be given the opportunity to do so by displacing the less senior employee.

*Id.* at 264, 267, 571 A.2d at 370–71.

■ We conclude that the holding in *Dallap* controls the outcome of the present case. Both Boris and Nemits were qualified to perform those duties which were assigned to Nemits and which permitted him to remain in a full-time position. However, Boris had more seniority than Nemits. Under these circumstances, the School District was not permitted to demote Boris in favor of Nemits, but instead, was required to assign those duties to Boris so that she could retain her position as a full-time professional employee. *See Id.*

Accordingly, we affirm the order of the Court of Common Pleas of Schuylkill County.

### ORDER

**NOW,** December 6, 1995, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter is hereby affirmed.