430 A.2d 268

**WARWICK BOARD OF SCHOOL DIRECTORS, Appellant,**

**v.**

**Aristoteles J. THEROS**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1980.

Decided March 13, 1981.

Reargument Denied May 11, 1981.

David Wagenseller, III, Lancaster, for appellant.

Michael I. Levin, Harrisburg, for Pa. School Bds. Assoc. (Amicus Curiae).

Gerald E. Ruth, York, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

PER CURIAM:

The Court being equally divided, the Order of the Commonwealth Court is affirmed.

O'BRIEN, C. J., files an Opinion in Support of Affirmance which NIX and LARSEN, JJ., join.

LARSEN, J., files a separate Opinion in Support of Affirmance.

FLAHERTY, J., files an Opinion in Support of Reversal which ROBERTS and KAUFFMAN, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

O'BRIEN, Chief Justice.

This case presents the issue of whether a school board may legally suspend a tenured professional employee for financial reasons alone without establishing any of the causes for suspension enumerated in § 1124 of The Public School Code.[1]

Appellee, Aristoteles J. Theros (Theros), a tenured professional employee of the Warwick School District in Lancaster County since 1965, was a teacher of business education. On June 29, 1976, the Warwick School Board adopted its budget for the 1976–1977 academic year. In an effort to reduce a projected budget deficit, the Board abolished three non-mandated supervisory positions, including the head of the Business Education Department and the Director of Athletics. At that time both supervisors were serving as half time administrators and half time teachers in the Business Education Department. After their administrative positions were eliminated, they were assigned to full time teaching positions in the Business Education Department. As a result, the business education staff had one more full time teacher than was needed.

None of the department's six business education teachers was certified to teach in any other subject area. All six teachers were evaluated according to the provisions of the School Code, 24 P.S. § 1–101 et seq., and the requirements of the Commonwealth's Department of Education. Theros was found to be the teacher with the lowest quality rating and the lowest total rating. On July 6, 1976, the School Board

1. Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 11–1124.

reviewed the ratings of the business education teachers and placed Theros on suspension. At the same time it authorized the superintendent to inform the Department of Education of the entire procedure, and Theros was notified that he would be suspended, effective September 8, 1976. Following a hearing which Theros requested pursuant to Local Agency Law,[2] the School Board affirmed the suspension of Theros from his position as a professional employee in the Warwick School District.

Theros appealed to the Court of Common Pleas of Lancaster County which affirmed the School Board and dismissed the appeal. On appeal to the Commonwealth Court, the order of the Court of Common Pleas was reversed and the case remanded for "entry of an order directing the reinstatement of [Theros] as a professional employee of Warwick School District with payment of an amount of money equal to the compensation he would have been paid during the period of suspension." We granted the School Board's petition for allowance of appeal.

Theros does not assert that the School Board suspended him for political or arbitrary reasons. He maintains only that the Board failed to establish a cause of suspension under § 1124 of the School Code, which provides as follows:

"Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

"(1) Substantial decrease in pupil enrollment in the school district.

"(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

2. Act of December 2, 1968, P.L. 1133, *formerly* 53 P.S. § 11301 et seq., repealed by Section 2(a) of the Judiciary Act Repealer Act, Act of April 28, 1978, P.L. 202.

"(3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes. "(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II, subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes." [3]

Clearly, the causes enumerated in paragraphs three and four were not applicable to the facts of this case. From the record of the hearing before the Board, it is also clear that the suspension of Theros was not based on a substantial decrease in pupil enrollment and that the elimination of supervisory positions in the district did not constitute curtailment or alteration of the educational program. In addition, the parties stipulated that if a teacher in the Business Education Department could be suspended legally, Theros was the appropriate one to be suspended.

The Board does not claim that Theros was suspended for any of the four causes enumerated in § 1124. Instead, it maintains that § 1124 does not contain an exclusive list of permissible reasons for suspending a professional employee. The Board bases its claim for authority to decrease staff size when economic conditions require on the general powers granted to school directors by § 1106 of the School Code, 24 P.S. § 11-1106, and by Article 3, § 14 of the Pennsylvania Constitution. Section 1106 provides as follows:

"[T]he Board of School Directors in every school district shall employ the *necessary* qualified professional employes, substitutes and temporary professional employes to keep the public schools open in their respective districts in compliance with the provisions of this Act." (Emphasis supplied)

The Pennsylvania Constitution, article III, § 14, directs the General Assembly to "provide for the maintenance and

---

**3.** A professional employee may always be terminated for cause shown. Section 1122 of the School Code, 24 P.S. § 11-1122.

support of a thorough and *efficient* system of public education. . . ." (Emphasis supplied)

The Board insists that § 1124 must be interpreted in light of the above constitutional and statutory provisions which justify the exercise of discretionary managerial authority by school boards in employment matters. It argues that the employment of unnecessary professional employees would violate its duties under § 1106 of the School Code as well as the Constitution's mandate for an "efficient" system of education. The Board asserts support for its claim in Pennsylvania case law relying principally on a 1939 decision by this Court in which earlier comparable statutory and constitutional provisions were invoked as authority for approving a suspension. *Ehret v. Kulpmont Borough School District*, 333 Pa. 518, 5 A.2d 188 (1939).

Thus, the Board argues that § 1124, which enumerates four specific causes for suspension, must be reconciled with the general grant of power given to school boards by the Constitution and § 1106 to hire the necessary teachers and to conduct an efficient system of public education. In determining the legislative intent in this matter, we are aided by a review of the history of § 1124.

In 1937 the Teachers' Tenure Act was enacted to assure continuous employment to capable and competent professional educators by removing the discretionary power of school boards to suspend or dismiss employees without cause. *See Streibert v. York School Directors*, 339 Pa. 119, 14 A.2d 303 (1940); *Malone v. Hayden*, 329 Pa. 213, 197 A. 344 (1938). At that time the only cause for suspension provided by the School Code was a "substantial decrease of pupil population within the school district." In 1939 this Court was required to interpret the Tenure Act in *Ehret v. Kulpmont Borough School District, supra.* There we approved the suspension of a tenured kindergarten teacher where the district's non-mandated kindergarten had been discontinued. The opinion in *Ehret* reflected the Court's uncertainty as to the effect of the Tenure Act on suspensions when it stated:

"If the legislature intended teachers to be employed, or retained, who are rendered unnecessary by the abolition of a department, in order to preserve the continuity and efficiency of the school system as a whole, it should have set forth such intention...." 333 Pa. at 526, 5 A.2d at 192.

Responding to *Ehret*, in 1939 the General Assembly amended § 1205 of the 1911 School Code to change "substantial decrease in pupil population" to "pupil enrollment", as the first and fundamental cause of suspension. Further, the General Assembly addressed the specific problem presented by *Ehret—viz.*, the abolition of departments and positions as well as changes in curriculum, by allowing for suspensions in the event of curtailment or alteration of program, provided the change was a result of substantial decrease in enrollment and was approved by the Department of Instruction.[4] Finally, in the 1939 amendment the General Assembly provided for suspensions in the event of school consolidations. Section 1124 of the 1949 School Code substantially re-enacted the 1939 amendment to § 1205. In 1963, the legislature amended § 1124 by adding a fourth cause of suspension—*viz.*, the reorganization of school districts.

A review of the legislative history of § 1124 clearly shows the General Assembly has responded over time to changed circumstances since the initial passage of the Tenure Act by enumerating additional causes for suspension. In so doing, its clear intent was to exclude all other causes not so enumerated in order to protect the rights of tenured professional employees.

Thus, the Board's contention that § 1124 does not delineate a complete list of permissible reasons for suspension must fail. Such an interpretation would render § 1124 meaningless since it would set no restrictions whatever on the Board's power to suspend. Clearly, this was not the legislature's intent.

4. Thus, *Ehret* is mistakenly relied upon by the Board as authority for upholding Theros' suspension inasmuch as the Code was subsequently amended to permit suspensions resulting from program changes under circumstances which clearly are not present in this case.

Furthermore, our case law is in accord with the conclusion that § 1124 contains the only four statutory reasons for which a tenured employee may be suspended. *See Alberts v. Garofalo*, 393 Pa. 212, 142 A.2d 280 (1958); *Bragg v. Swarthmore School District*, 337 Pa. 363, 11 A.2d 152 (1940); *Fatscher v. Board of School Directors*, 28 Pa.Cmwlth. 170, 367 A.2d 1130 (1977). Since the Warwick School Board's action was not prompted by any of the causes specified in the Code but instead was taken to reduce the district's operating expenses, it was unlawful. As necessary and desirable as the goal of budgetary economy may be, it is not included among the reasons permitted by the General Assembly for suspending a tenured professional employee.

The Pennsylvania Constitution, Article 3, § 14, places responsibility for the educational system with the General Assembly. If the financial burden of operating Pennsylvania's system of public education has become so onerous that cutbacks in tenured professional staff are required, the General Assembly has the authority to respond by further amending § 1124 to permit suspensions for additional reasons. This Court should not presume to interfere with the General Assembly's constitutional authority for reasons of public policy.

I would affirm the order of the Commonwealth Court and remand the case to the Court of Common Pleas of Lancaster County to proceed in accordance therewith.

NIX and LARSEN, JJ., join in this opinion.

LARSEN, J., files a separate Opinion in Support of Affirmance.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

I join in Mr. Chief Justice O'Brien's Opinion in Support of Affirmance. Additionally, I would like to add that the reason the legislature limited suspensions of teachers to the four enumerated situations was for the purpose of maintain-

ing the quality of education. The legislature has wisely recognized that quality education of children is a priority service that must be provided to them both for their benefit and the benefit of our society. *See Walker v. School Dist. of Scranton*, 338 Pa. 104, 12 A.2d 46 (1940) (underlying purpose of Teacher Tenure Act is to achieve fundamental public policy of obtaining best education possible for the children of the Commonwealth) *and Kaplan v. School Dist. of Philadelphia*, 178 Pa.Super. 88, 113 A.2d 164 (1955), aff'd. 388 Pa. 213, 130 A.2d 672 (1957) (intent of general assembly in enacting Teacher Tenure Act, including section 1124, 24 P.S. § 11–1124, is to provide for the welfare of the students by providing them with best education possible). While "economic measures" such as suspending teachers for reasons other than those enumerated in section 1124 can provide financial savings, the General Assembly has determined that such measures are not educationally sound.

## OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

The Opinion in Support of Affirmance authored by Mr. Chief Justice O'Brien too narrowly construes statutory provisions permitting the suspension of professional employees of school districts. The conclusion that the Legislature intended Section 1124 of the School Code to delineate the sole permissible reasons for the suspension of teachers is not at all convincing.

Section 1124 provides that the board "may" suspend the necessary number of employees for "*any*" of the causes enumerated. Surely, had the Legislature intended that a board could suspend for *only* the causes enumerated, it would have said so. Interestingly, Section 1125 of the Code, 24 P.S. 11–1125, begins as follows: "Whenever a board of school directors decreases the size of the staff of professional employees ..." and the section goes onto provide a rating system for boards to follow in making suspensions. Section 1125 makes no reference to Section 1124 as providing the only reasons for which a staff may be reduced. Clearly, the

Legislature intended that school boards have authority to decrease the size of their professional staffs when economic conditions require such a decrease.

We believe that Section 1124 must be interpreted in light of the constitutional and statutory provisions concerning the administration of education in the Commonwealth. Section 1106 of the School Code, 24 P.S. § 11–1106, provides that: "The board of school directors in every school district shall employ the necessary qualified professional employees . . . to keep the public schools open in their respective districts . . . ." The Constitution, Article 3, Section 14, directs the General Assembly to "provide for the maintenance and support of a thorough and efficient system of public education . . . ." In *Ehret v. Kulpmont Borough School District*, 333 Pa. 518, 5 A.2d 188 (1939), we recognized that a school board had discretion to add a supplementary department, in that case a kindergarten, and subsequently to suspend a teacher whose position was eliminated by the discontinuance of that department. In considering the statutory and constitutional provisions, we stated:

" 'Efficient' has reference not only to the qualifications of the teacher, but relates to other basic matters associated with the school system. There are many factors that enter into the meaning of the word 'necessary,' as we said in *Wilson v. School Dist. of Phila.*, 328 Pa. 225, 236 [195 A. 90]. What would be 'necessary' under this provision is a matter within the administrative discretion of the board to a large extent. Thus, the board has discretion to add supplementary departments, and by so doing to create a necessity for more teachers. The uncertainty of the school tax rate comes from the uncertainty of the amount that is required to pay the teaching staff of each district, which may be increased without outside interference, and may be decreased within the limitations of the Act. "If the legislature intended teachers to be employed, or retained, who are rendered unnecessary by the abolition of a department, in order to preserve the continuity and efficiency of the school system as a whole, it should have

set forth such intention specifically in dealing with a subject as important as the one before us."

In *Sporie v. Eastern Westmoreland Area Vo-Tech School*, 47 Pa.Cmwlth. 390, 408 A.2d 888 (1979), the Commonwealth Court affirmed the suspension of a teacher, certified in agriculture, when the school's agriculture program was curtailed by the elimination of the vocational agricultural course. Citing *Ehret*, the opinion states:

"Just as the Court in *Ehret* found school boards vested with a general power, under the School Code of 1911, to suspend tenure teachers who are no longer necessary for the efficient operation of the school district because their department has been abolished, we find that school boards possess a similar power under the existing school code. By allowing the suspension of professional employees upon the alteration or curtailment of an educational program 'to conform with standards of organization ... required by law' and by continuing, in Section 1106 of the Code, the requirement or standard that school boards shall hire only necessary teachers, the legislature has authorized school boards to suspend professionals made unnecessary by the curtailment or alteration of a school's educational program."

Theros relies heavily on our decision in *Alberts v. Garofalo*, 393 Pa. 212, 142 A.2d 280 (1958). That case is clearly distinguishable. A close reading of *Alberts* makes it apparent that this Court was not at all satisfied that the abolition of Alberts' position and his removal as a professional employee was based purely on financial considerations. As Justice Cohen noted:

"Although there was testimony before the court below that this action was taken as an 'economy measure', no reason therefor was recorded in the minutes of the meeting; nor is there evidence that there had been previous discussion or approval of this action by the directors, the country superintendent of public instruction."

Considerations of public policy favor resolution of this case against the appellee. Increasingly, school districts are

finding it difficult to meet the financial burden of operating their educational systems. For this Court to conclude that while a school district may abolish positions for economic reasons, it must nevertheless retain the teachers who held those positions even though those teachers would have no duties to perform, is to effectuate a result which the Legislature did not intend in enacting Section 1124. This is not to say that a school district may abolish a position or department merely to circumvent the tenure provisions of the Code or to suspend a professional employee for arbitrary reasons. It is only when a board has clearly established that the reduction conforms with the mandates of Section 1106 of the Code and the Constitutional provisions herein referred to, and that the suspension is made in accordance with the requirements of 24 P.S. § 11–1125, that the reduction and suspension should be approved.

Hence, we would reverse the Order of Commonwealth Court and reinstate the Order of the Court of Common Pleas.

ROBERTS and KAUFFMAN, JJ., join in this Opinion in Support of Reversal.