543 A.2d 1087

**Charles E. GIBBONS, Appellee,**

v.

**NEW CASTLE AREA SCHOOL DISTRICT, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1987.

Decided July 6, 1988.

Reargument Denied Sept. 28, 1988.*

* Madam Justice Stout did not participate in the consideration or decision of the Petition for Reargument.

444

Dominick Motto, Balph, Nicolls, Mitsos, Flannery & Motto, New Castle, for appellant.

Bruce D. Campbell, Louis C. Long, Scott T. Redman, Meyer, Darragh, Buckler, Bebenek & Eck, amicus curiae for School Dist. of Pittsburgh.

Robert A. MacDonnell, Philadelphia, amicus curiae for Abington School Dist.

Stephen S. Russell, Chief Staff Counsel, New Cumberland, amicus curiae for Pennsylvania School Board's Assn.

Mark P. Widoff, Widoff, Reager, Selkowitz & Alder, P.C., Harrisburg, Ira Weiss, Pittsburgh, amicus curiae for Pennsylvania Ass'n of Elementary and Secondary School Principals.

Thomas W. Scott, Kilian & Gephart, Harrisburg, amicus curiae for Pennsylvania State Educ. Assn.

Kenneth E. Fox, Gregory S. Fox, Ellwood City, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

This case presents a question regarding the meaning, more precisely the scope, of Section 1125.1(c) of the Public School Code of 1949, 24 P.S. § 11–1125.1(c). That section, added to the Code by Act 1979-97, provides that "a school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes." The New Castle Area School District appeals by allowance a Commonwealth Court order reversing an order of the Lawrence County Court of Common Pleas on the basis of Section 1125.1(c) 93 Pa.Cmwlth. 28, 500 A.2d 922. Common Pleas Court had affirmed the school board's decision to appoint Charles Gibbons, then the principal of Benjamin Franklin Junior High School, as assistant principal of New Castle Senior High School, although the senior high school principal, who was retained in that position, had less seniority.

In June of 1982, the school board decided to close George Washington Junior High School, one of the two schools in the district serving grades 7 through 9. Franklin, the remaining junior high school, was to thereafter accommo-

date all of the district's seventh and eighth grade students; the senior high school, which had previously encompassed grades 10 through 12, expanded to include the grade 9 students from both Washington and Franklin.

With the closing of Washington, two secondary administrator's positions were abolished. The board returned the two administrators with the least seniority—the assistant principal of Franklin and the assistant principal of the senior high school—to teaching positions. Amen Hassen and Robert Navarra, principal and assistant principal of Washington, respectively, both more senior than Gibbons, were assigned to the corresponding positions at Franklin. Gibbons was reassigned as assistant principal at the senior high school, a position carrying the same salary as principal.

At Gibbons's request, the board held a hearing to review the decision. In its adjudication affirming the reassignment, the board stated that it chose to retain Frank Dattilo as senior high school principal rather than appoint Gibbons to that position because Dattilo's success and experience as principal of the high school was important in maintaining the established educational program. Lack of administrative experience with a high school or program of similar size was thought to be detrimental to the efficient operation of the high school, especially during the transition period when the ninth grade was being added.

The board's adjudication of Gibbons's challenge was made according to the standard applicable to personnel actions under Section 1151 of the Code, 24 P.S. § 11–1151, that the action not be "arbitrary, discriminatory, or based upon improper motives." The board rejected Gibbons's argument from Section 1125.1(c), concluding that that section was inapplicable where the employee has not demonstrated that a suspension has occurred; where the employee has not demonstrated that the action was taken for any of the reasons enumerated in Section 1124 (substantial enrollment decrease in district, or in particular classes or programs, consolidation of schools, reorganization of school districts); where the employee's professional status has been un-

changed; or where the alternative realignment would disrupt an established educational program. The board also found that Gibbons, being third on the seniority list, lacked standing to raise the issue of Section 1125.1(c) to claim one of two secondary principal positions.

Following *Shestack v. General Braddock Area School District*, 63 Pa.Commw. 204, 437 A.2d 1059 (1981), the common pleas court rejected the Board's determination that Section 1125.1(c) applied only where the employee was suspended, but affirmed the adjudication. The court relied on *Godfrey v. Penns Valley Area School District*, 68 Pa.Commw. 166, 449 A.2d 765 (1982), in holding that the practicality of a realignment and its effect on the educational process within the school district must be considered in addition to seniority.

In *Godfrey,* the Commonwealth Court had affirmed on the basis of the trial court's opinion. The school board had suspended Godfrey, the least senior member of his department, rather than realign the entire teaching staff by suspending from other departments two teachers with even less seniority than Godfrey, reassigning two members of Godfrey's department with dual certifications out of Godfrey's department to replace the suspended teachers, and allowing Godfrey to remain. The trial court read Section 1125.1(c) to require realignment only where the complaining professional was certified to assume a position being held by a less senior professional. The court also stated in dictum that even if a more extensive realignment was required by Section 1125.1(c) to accommodate the seniority of the staff members, the impact of such a realignment on the educational process was a valid consideration for the school board.

In deciding in the case at bar that the trial court and the board had erred in interpreting and applying Section 1125.-1(c), the Commonwealth Court reviewed a number of its own decisions involving that section and its predecessor. The court drew largely on the differences between the repealed Section 1125 and its replacement. Reading the

plain language of subsection (c), the court, through its cases, determined that

> The obvious intention of Section 1125.1(c) is to require school districts to assign positions to their professional staff strictly on the basis of seniority, and to similarly realign their professional staff on the basis of seniority when personnel changes have to be made. There is no restriction in Section 1125.1(c) limiting the duty to realign only to those instances when personnel changes have to be made because of suspensions....

*In Re: Appeal of Bernard E. Cowden,* 87 Pa.Commw. 165, 169, 486 A.2d 1014, 1016 (1984). Because Gibbons was "certificated" as a secondary principal, and the high school principal position was being held by someone with less seniority, the court held that realignment undertaken by the board had to insure Gibbons's opportunity to fill the position to comply with the Code.

Since *Shestack,* the first case involving application of Section 1125.1(c), Commonwealth Court has relied heavily on the fact that the words of the statute are clear and free from ambiguity. In that case, the court determined that the procedural protections of Section 1125.1, that is, a hearing in accordance with the Local Agency Law, are available to challenge a *demotion* inconsistent with the seniority preference stated in subsection (c), even though the title of the section refers only to "Persons to be *suspended* " (emphasis added). Use of the term "suspension" in the title was found not to control over the unqualified language of subsection (c).

 Although the title of Section 1125.1 may not be held to control the language of the subsection, we do not think it may be ignored entirely. There is, ordinarily, a purposeful distinction between a *sub* section and an independent section of a statute. The former, by its nature, is placed within a context, and thereby limited to a degree that the latter is not. Section 1125.1, like its predecessor, established a legislative policy on how school districts are to reduce staff while protecting the job security interests of

tenured professional employees. It would give undue weight to the seniority preference of subsection (c), which is only a constituent part of this policy, to remove it from this context and treat it as an overarching statement of the primacy of seniority in the placement of professionals generally. Nothing about Act 1979–97 indicates that it was intended to alter the longstanding statutory grant of discretion to school boards to appoint professional staff on the basis of the educational needs of the district, *see*, 24 P.S. § 5–508, beyond requiring that the diminishment of professional employees' status be accomplished according to seniority. We will not impute to the General Assembly an intention to so drastically change (and reduce) the authority of school boards over such matters, requiring them to "assign positions to their professional staff strictly on the basis of seniority," *Appeal of Cowden*, 87 Pa.Commw. at 169, 486 A.2d at 1016, by implication from a subpart of a statute whose ostensible purpose is to accomplish a much narrower end.

Reading Section 1125.1(c) in context, we must thus reject the dictum in *Cowden* that would prevent a school district from initially appointing as principal anyone but the most senior member of the administrative staff certified to hold the position. We likewise reject, as unreasonable, a reading of Section 1125.1(c) that would produce the same effect, but trigger its implementation only when a school district finds it necessary to "realign" its staff.

In the present case, Gibbons, as principal of a junior high school, in effect seeks promotion to the position of senior high school principal, and claims entitlement to that position simply because the school district has realigned its staff. We agree with the view expressed by *amicus curiae* Pennsylvania Association of Elementary and Secondary School Principals that Section 1125.1 operates to allocate only the *adverse* effects of employment changes in order of seniority from least to greatest, allowing, even requiring if necessary, a more senior employee to "bump" a less senior one of equal or lesser status. It is beyond the purpose of that

section, however, to require a professional to be promoted or advanced in status. By returning the two administrators with least seniority to teaching positions, and giving Gibbons the opportunity to fill one of the positions thus vacated, the board fully complied with Section 1125.1(c).

Taken in isolation, the language of subsection (c) strongly supports Gibbons's claim; the thorough opinion for the court below by the learned Judge Craig details the merits of such a reading. In reversing that court, we recognize that the matter is far from free of doubt. By reading the language of subsection (c) within the context of the larger section and of the Code as a whole, we do not consider ourselves to engage in "disregard[ing] the letter of the law under the pretext of pursuing its spirit," 1 Pa.C.S. § 1921(b); rather, we seek to effectuate the legislative determination of the General Assembly within the limits elsewhere established by that same body. If we have erred in discerning those limits or the legislature's intention to alter them, it is, of course, within the competence of that body to correct our determination.

The order of the Commonwealth Court is reversed.

STOUT, J., and HUTCHINSON, Former J., did not participate in the consideration or decision of this case.

LARSEN, J., filed a dissenting opinion in which PAPADAKOS, J., joined.

LARSEN, Justice, dissenting.

I dissent and in support thereof adopt the Commonwealth Court opinion authored by the Honorable David W. Craig. 93 Pa.Commw. 28, 500 A.2d 922 (1985). In addition, I would note that this Court stated in *Commonwealth v. Magwood,* 503 Pa. 169, 176–77, 469 A.2d 115, 118–19 (1983), that:

While 1 Pa.C.S. § 1924 does indeed provide that "[t]he title ... of a statute may be considered in the construction thereof", that section also provides that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute *shall not be considered*

*to control ..."* Emphasis added. It is also a "well-established rule" that the title "cannot control the plain words of the statute" and that even in the case of ambiguity it may be considered only to "resolve the uncertainty."

Thus, the majority errs in finding that section 11–1125.-1(c) of the Public School Code, 24 P.S. §§ 1–101—26–2607–A, must be applied *only* in instances of professional employee *suspensions* due to staff realignment.

Commonwealth Court has been consistently interpreting section 1125.1(c) to include not only those employees suspended because of staff realignment, but also those employees *demoted* for that reason, since the enactment of this section in 1979. *See Appeal of Cowden,* 87 Pa.Commw. 165, 486 A.2d 1014 (1984); *Fry v. Garnet Valley School District,* 86 Pa.Commw. 206, 485 A.2d 508 (1984); *Olson v. Board of School Directors Methacton School District,* 84 Pa.Commw. 189, 478 A.2d 954 (1984); *Shestack v. General Braddock Area School District,* 63 Pa.Commw. 204, 437 A.2d 1059 (1981). If the Legislature were aggrieved by this straightforward interpretation of the law, surely it would have acted to correct the same by now.

In fact, the Legislature has already acted to expand Commonwealth Court's correct reading of the plain and unambiguous language of section 1125.1(c), by amending section 1125.1(d)(2) in 1986, to specifically include, among those who must be *reinstated* on the basis of seniority, those professional employees who are *demoted* because of reduced student enrollment and course offerings, consolidation or reorganization. 24 P.S. § 11–1125.1(d)(2), as amended 1986, July 10, P.L. 1270, No. 117, § 4, imm. effective. Clearly, the Legislature added demoted professional employees to its law regarding the reinstatement of suspended professional employees (section 1125.1(d)(2)) because the Legislature recognized that demotions due to staff realignment were already subject to the seniority law set forth in section 1125.1(c), and the legislators were seeking to make clear that all suspensions or demotions for whatever reason

are to be determined solely on the basis of seniority and certification.

The purpose of section 1125.1 was to put certainty into the law by making seniority and certification the *only* factors to be considered when staff changes are required due to reduced student enrollment and course offerings, consolidation, reorganization or staff realignment. This issue was debated at length in the Legislature. *See* Legislative Journal–House at 1117–45, 1191–1200, 1203–16 (June 4 and 6, 1979). A minority of legislators attempted, by amendment, to retain the old rating system, which was subject to the whim and discretion of local administrators, but these attempts were soundly defeated. *Id.*

Formerly, teachers were at the mercy of the tyranny of local school boards. The majority opinion of Mr. Justice Zappala heralds a return to that era of unbridled, arbitrary discretion, cloaked in the guise of "the educational needs of the district." Maj. op. at 1089.

Accordingly, I dissent and would affirm the order of the Commonwealth Court which reversed the order of the Court of Common Pleas of Lawrence County.

PAPADAKOS, J., joins in the dissenting opinion.