648 A.2d 108

**Michael HRITZ, Appellant,**

v.

**LAUREL HIGHLANDS SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1994.

Decided Sept. 9, 1994.

protects those who have been rehabilitated or have entered rehabilitation and no longer use drugs or alcohol).

354

Ira Weiss, for appellant.

William M. Radcliffe, for appellee.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

Before this Court is the appeal of Michael Hritz from an order of the Court of Common Pleas of Fayette County which affirmed Michael Hritz' demotion from an administrative position to a teaching position by the School Board of Laurel Highlands School District (Board).

The trial court adopted the findings of fact of the Board as follows. Michael J. Hritz is a professional employee with the Laurel Highlands School District. From 1989 until 1991 he

held the position of assistant principal/buildings and grounds supervisor at the Laurel Highlands Junior High School. Only part of Hritz' time was spent in duties relating to his position of assistant principal. The remainder of his time involved his duties as building and grounds supervisor.

In July 1991, the Administration of the District abolished the position of assistant principal/buildings and grounds supervisor for "economic reasons." Upon the advice of the Laurel Highlands Junior High School principal, the school superintendent recommended that the Board demote Hritz to a teaching position, although Mr. Harry Joseph, a professional employee with less seniority than Hritz, held a position of assistant principal at the junior high. Mr. Joseph spent all of his time with duties relating to his position as assistant principal. It was the practice of the school district when administrative positions were abolished for economic reasons to demote the person holding that position, regardless of seniority.

Upon receiving notice of his demotion Hritz requested and was granted a hearing. A hearing was held on September 12, 1991, and the Board concluded that, under its standard of review delineated by *Chester Upland School District v. Brown*, 67 Pa.Commonwealth Ct. 540, 447 A.2d 1068 (1982), Hritz had failed in his burden of proving that his demotion was arbitrary, discriminatory, or founded upon improper motives. On appeal, the trial court affirmed the order of the Board. This appeal followed.[1]

Hritz does not challenge his demotion directly. Instead, he argues that for the purposes of the School Code, a "demotion" is the same thing as a "suspension," and, therefore, Section 1125.1(c) of the Public School Code of 1949 (Code)[2] requires the Board to "bump" Mr. Joseph, an employee with less

1. This matter was originally heard by a panel of this Court on March 1, 1993. Upon petition by the Board the Court vacated the prior Order, which reversed the Court of Common Pleas and ordered reargument before the Court en banc which took place on April 13, 1994.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1125.1(c).

seniority than Hritz, and place Hritz in the position of assistant principal at the junior high. We disagree.

Section 1125.1(c) of the Code provides that:

A school entity shall realign its professional staff so as to insure that more senior employes are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.

Hritz contends that for purposes of Section 1125.1(c), a demotion and a suspension are the same personnel action, relying on this Court's decision in *Shestack v. General Braddock Area School District*, 63 Pa.Commonwealth Ct. 204, 437 A.2d 1059 (1981).

Obviously, all demotions are not suspensions, and Section 1125.1(c) of the Code does not cover every staffing change made by school districts. Such a broad interpretation of the scope of Section 1121.1(c) was clearly disapproved by the Supreme Court:

Section 1125.1 ... established a legislative policy on how school districts are to reduce staff while protecting the job security interests of tenured professional employees. It would give undue weight to the seniority preference of subsection (c), which is only a constituent part of this policy, to remove it from this context and treat it as an overarching statement of the primacy of seniority in the placement of professionals generally.

*Gibbons v. New Castle Area School District*, 518 Pa. 443, 448–49, 543 A.2d 1087, 1089 (1988). Our recent decision in *Filoon v. Middle Bucks Area Vocational–Technical School*, 160 Pa.Commonwealth Ct. 124, 634 A.2d 726, 729 (1993), distinguished demotions and suspensions:

A demotion under the School Code does not involve a separation from service, but rather is "a reassignment to a position which has less authority, prestige or salary." *Walsh v. Sto–Rox School District*, 110 Pa.Commonwealth Ct. 421,424, 532 A.2d 547, 548 (1987). A reduction to part-time status also is a demotion. *Reed [v. Juniata–Mifflin Counties Area Vocational–Technical School*, 112 Pa.Com-

monwealth Ct. 529], 532, 535 A.2d [1229], 1231 [1988]. Demotions are presumptively valid and an employee seeking to overturn a demotion has the burden of proving the action was arbitrary, discriminatory or founded on improper considerations. Id. at 536, 535 A.2d at 1233. As to what constitutes a suspension, we have held that a suspension is in the nature of an impermanent separation: a furlough or layoff. Norwin School District v. Chlodney, 37 Pa.Commonwealth Ct. 284, 286, 390 A.2d 328, 330 (1978). Permissible reasons for a suspension are set forth in Section 1124 of the School Code, and when resulting from a realignment, it must be implemented in accordance with that provision's strict seniority principles. With regard to what constitutes a realignment for purposes of the School Code, we have adopted the definition "to reorganize or make new groupings of." Fry v. Garnet Valley School District, 86 Pa.Commonwealth Ct. 206, 209, 485 A.2d 508, 510 (1984) (citing Webster's New Collegiate Dictionary 954 (1981)).

 Further, separate provisions of the Code govern each action. Demotions are covered by Section 1151 of the Code [3] and the sole avenue of appeal from an adverse adjudication of a school board is to the Secretary of Education. Section 1131 of the Code, 24 P.S. § 11–1131. Suspensions on the other hand, are controlled by Section 1124 of the Code, 24 P.S. § 11–1124 (causes for suspension), and Section 1125.1 of the Code which must be read in tandem. [4] The courts of common pleas have jurisdiction to hear the appeals pursuant

**3.** Section 1151 provides:
[T]here shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.
24 P.S. § 11–1151.

**4.** Section 1124 provides the *exclusive* list of reasons for which a tenured professional may be suspended. *Warwick Board of Supervisors v. Theros*, 494 Pa. 108, 430 A.2d 268 (1981). Section 1151 is not similarly limited.

to these provisions. Section 1125.1(f) of the Code, 24 P.S., § 11–1125.1(f). There have been instances where this Court has interpreted certain demotions due to realignments to be a hybrid action, thereby justifying application of the restrictions imposed by Sections 1124 and 1125.1, *i.e.*, seniority. But the case before us now is not one of them. A "realignment demotion" is a "demotion result[ing] from a suspension caused by the elimination of a position and the *attending reorganization*." *Filoon*, 160 Pa.Commonwealth Ct. at 131, 634 A.2d at 730 (emphasis added).

The parties, in their stipulation of facts presented to the Board, *agree* that Hritz was demoted (School Board Hearing 9/12/91, Exhibit No. 1.), and the Board also found that no professional employees were furloughed as a result of Hritz' demotion. No evidence was adduced at the hearing indicating that Hritz' duties as assistant principal/building and ground supervisor were reassigned to another professional employee. Hritz merely makes the bald statement in his brief that his demotion was the result of a realignment, but did not present any facts to support such a statement. Simply reducing staff, without more, is not a reorganization.

Hritz' reliance on *Shestack* is misplaced. In *Shestack* the petitioner was demoted from his position as principal to a teaching position because the school board closed an entire elementary school due to a decline in student enrollment. Twenty-two other professional and nonprofessional employees were suspended. We held that Section 1125.1 of the Code is not limited in application to suspended employees, but will also be applied where a realignment has occurred which resulted in a de facto suspension and simultaneous reassignment to a lesser position. *Shestack; see also Filoon*, 160 Pa.Commonwealth Ct. at 130–31, 634 A.2d at 729–30 (explaining our holding in *Shestack* ).

■ Reviewing the case law, two elements of commonality become clear. In order for a demotion to constitute a "realignment-demotion," the demotion must be (1) due to one of the enumerated reasons provided in Section 1124 of the Code,

such as declining enrollment or the closing of a school, and (2) involve some sort of regrouping or reorganizing of duties of other professionals within the district beyond simply the abolishment of a single position resulting in the demotion of one person. *See Meck v. Carlisle Area School District,* 155 Pa.Commonwealth Ct. 469, 625 A.2d 203 (1993).

■ In this case, Hritz has proven neither of the above elements. His position was abolished for reasons of economy and efficiency. There was no evidence presented to indicate that the duties and responsibilities of other professionals were affected. Accordingly, Hritz's demotion was a "pure demotion" and governed by Section 1151 of the Code, not Section 1125.1(c). *See Filoon.*

■ Even assuming *arguendo* that Section 1125.1(c) did apply, Hritz would not prevail. He only spent part of his time in duties relating to his position as assistant principal.[5] By bumping Mr. Joseph, who performed assistant principal duties exclusively, Hritz would be involved in the duties of an assistant principal one hundred percent of the time. No evidence was presented that a building and grounds supervisor was of equal status and pay of an assistant principal. If a reduction to part time status is a demotion, *Filoon,* an increase from part time assistant principal to full time assistant principal is conversely a promotion or increase in status. Section 1125.1(c) of the Code does not require, nor even deal with, the *promotion* of a professional employee. *Gibbons.*

■ The Board concluded that Hritz' demotion was not arbitrary, discriminatory or founded upon improper considerations under Section 1151 of the Code. The review of the propriety of such a determination lies with the Secretary of Education, not with the courts of common pleas.[6] Section

5. Several witnesses testified that under his contract, Hritz was to spend 51% of his time involved in administrative duties. *See* Testimony of Dr. Sheba, Notes of Testimony at 12 and 14; Testimony of Mr. Sepic, Notes of Testimony at 23 and 29–30; Testimony of Hritz, Notes of Testimony at 37.

6. Although not raised by the parties, we may raise the issue of jurisdiction *sua sponte. Filoon.*

5103 of the Judicial Code, 42 Pa.C.S. § 5103, requires that erroneously appealed cases must be transferred to the proper "tribunal." In *Meck* we held that the Secretary is a tribunal for the purpose of the type of appeal presented here. Accordingly, we must vacate the trial court's order, remand the case, and instruct the court to transfer Hritz' appeal to the Secretary for a determination of whether Hritz' demotion was proper.[7]

## ORDER

NOW, September 9, 1994, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby vacated and this case is remanded to the trial court with directions that it transfer the matter to the Secretary of Education.

Jurisdiction relinquished.

PELLEGRINI, J., concurs in the result only.

This decision was reached before the conclusion of President Judge CRAIG's service.

FRIEDMAN, Judge, dissenting.

I believe that the majority, and this court in *Filoon v. Middle Buck Area Vocational–Technical School,* 160 Pa.Commonwealth Ct. 124, 634 A.2d 726 (1993), make imprudent and erroneous distinctions between what they label "realignment-demotions" and "pure demotions." Because I believe that *Filoon* was incorrectly decided, I must dissent from the majority here which relies upon the *Filoon* holding.

In *Shestak v. General Braddock Area School District,* 63 Pa.Commonwealth Ct. 204, 437 A.2d 1059 (1981), we specifically held that a principal who had been demoted to a teaching position was entitled to a hearing before the school board

7. Since Hritz' appeal was timely filed with the Court of Common Pleas, it is timely when transferred to the Secretary. Also, if Hritz does not wish to pursue his case before the Secretary, he may, of course, withdraw his appeal.

based on the plain meaning of § 1125.1(c). In the case before us, the majority ignores the fact that § 1125.1(c) was what gave Shestak that right.

Twice since *Shestak*, we have again applied § 1125.1(c) to demotions. In both *Appeal of Cowden*, 87 Pa.Commonwealth Ct. 165, 486 A.2d 1014 (1984) and *Fry v. Garnet Valley School District*, 86 Pa.Commonwealth Ct. 206, 485 A.2d 508 (1984), we specifically held that the demotion of a school principal to a teaching position was within the purview of § 1125.1(c).

Here, the majority refuses to follow *Cowden, Fry* or *Shestak* based on our decision in *Filoon* and on the belief that our supreme court contradicted *Cowden, Fry* and *Shestak* in *Gibbons v. New Castle Area School District*, 518 Pa. 443, 543 A.2d 1087 (1988). In determining that *Gibbons* contradicts the prior cases, I believe that this court has misinterpreted *Gibbons*. Additionally, I believe that *Filoon* was improperly decided and should be reversed because the court failed to consider applicable legislative changes to § 1125.1.

In *Gibbons*, when declining enrollment forced a school district to close one of its junior high schools, Gibbons, the junior high school principal, was reassigned as the assistant principal of a high school. Gibbons was also "certificated" to serve as a high school principal, and the principal of the high school where Gibbons was assigned as assistant principal had less seniority than Gibbons. Although Gibbons experienced no loss of pay as a result of his new assignment and was, in fact, paid the same salary as the high school principal, Gibbons asserted that § 1125.1(c) required that he be named principal of the high school rather than become a subordinate of someone with less seniority than he.

However, our Supreme Court recognized that Gibbons was neither suspended nor demoted, but rather, sought a *promotion* from principal of a junior high school to principal of a high school. The supreme court rejected the idea that § 1125.1(c) requires school districts to *promote* employees according to seniority, noting that to do so would give undue weight to a subsection of a section entitled "[p]ersons to be

suspended." The Court in *Gibbons* reasoned that the word "suspended" in the section title indicates that § 1125.1(c) "operates to allocate only the *adverse* effects of employment changes in order of seniority...." *Id.* at 449, 543 A.2d at 1090 (emphasis in original).

Thus, *Gibbons* effectively distinguishes between promotions and suspensions with regard to the application of § 1125.1(c), finding that it applies only in the latter case. However, contrary to the majority's view, *Gibbons* does not address the question of whether § 1125.1(c) applies to suspensions and demotions. Nor does it contradict our holding in *Shestak.* Merely because *Gibbons* held that the negative connotation of the word "suspended" in the section title prohibits employees from using § 1125.1(c) to obtain a *promotion* does not limit the applicability of § 1125.1(c) to suspensions. Suspensions and demotions, unlike promotions, are both "adverse effects of employment changes."

Although the economic impact of demotion is less severe than that of suspension, both have a serious adverse effect upon the employee. Legally, a demotion is not a lesser occurrence than suspension. In both cases, employees are removed from their jobs. Suspension occurs when employees lose their jobs and are unable to fill any lesser position, either because they are not properly certificated or do not have enough seniority to "bump" someone with less seniority. Demotion occurs when employees lose their jobs but happen to have proper certification and sufficient seniority to "bump" a lower-level employee. Demotion is the equivalent of being suspended and then re-hired in a different capacity with less salary, prestige or authority. Furthermore, both are "impermanent separations" from positions of higher prestige, authority, and salary which a professional employee once held. *Cf. Norwin School Dist. v. Chlodney*, 37 Pa.Commonwealth Ct. 284, 390 A.2d 328 (1978).

Because the General Assembly has acknowledged that seniority is sacrosanct for determining the order in which professional employees lose their right of tenure, I cannot believe that the legislature intended that seniority be ignored in a

situation such as the one with which we are confronted here. If a professional employee is properly certificated and another employee holding a similar position has less seniority, then seniority must prevail. I believe that cases such as *Filoon* draw an incorrect distinction between a "realignment-demotion" and any other type of demotion, with the exception of demotions for personal cause, and that therefore the General Assembly never intended the result reached by the majority. *See* § 1151 of the Code, 24 P.S. § 11–1151. In keeping with legislative intent, we should not condone situations where professional employees, such as Hritz, are improperly stripped of their jobs in contravention of a system that acknowledges the legislative right of seniority. For the courts to eliminate that strong tradition by creating fictitious categories of demotions is clearly an abuse of judicial discretion. *See Gibbons* (Larsen, J., dissenting).

Accordingly, because the provisions of § 1124 [1] and § 1125.1 are so closely intertwined, they cannot be analyzed separately. A careful reading of § 1124 and § 1125.1 reveals that Hritz's demotion was *improper* because he was demoted for a non-§ 1124 reason.

In *Warwick Board of School Directors v. Theros*, 494 Pa. 108, 430 A.2d 268 (1981), our supreme court held that § 1124

---

1. Section 1124 provides:

 Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

 (1) Substantial decrease in pupil enrollment in the school district;

 (2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, approved by the Department of Public Instruction, as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

 (3) Consolidation of schools, whether within a single district, through a merger of districts, or as a result of joint board agreements, when such consolidation makes it unnecessary to retain the full staff of professional employes.

 (4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

is an exclusive list of the lawful causes for suspension and that a school board may not suspend a professional employee for economic reasons alone without establishing a § 1124 cause. Additionally, we have held that § 1125.1(c) equally protects employees who are suspended and employees who are demoted, notwithstanding that the section title is "[p]ersons to be suspended." *Shestak; see also Cowden; Fry.* Thus, we have determined that suspensions and demotions should be treated alike.

In 1986, the legislature revised § 1125.1(d)(2) of the School Code to include both demoted and suspended employees. This section now provides

> Suspended professional employes *or professional employes demoted for the reasons set forth in section 1124* shall be reinstated on the basis of their seniority within the school entity. No new appointment shall be made while there is such a *suspended or demoted* professional employe available. . . .

(Emphasis denotes those portions that were added to the statute.) This alteration constitutes legislative ratification of our earlier decisions holding that demotions fall within the scope of § 1125.1.

Section 1124 presents the exclusive list of lawful causes for demotions and that, as in suspensions, a school board may not realign its staff so as to demote a professional employee without establishing a § 1124 cause. Hritz was demoted for a non-§ 1124 reason. Therefore, Hritz's demotion was unlawful.

Accordingly, I would reverse the trial court's order and direct the trial court to remand to the School District to reinstate Hritz into an assistant principal position with full back pay equal to the difference in the salary Hritz would have made had he remained an assistant principal and his salary following his demotion, plus interest and costs.

NEWMAN, Judge, dissenting.

Because I believe that we should affirm the order of the Court of Common Pleas of Fayette County, I respectfully dissent.