Cassandra Richardson KEMP, Richard Mascari, Lorraine Eberhardt Tyler, and Margaret O. Brown, Appellants

v.

## CITY OF PITTSBURGH PUBLIC SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued May 8, 2007.

Decided July 25, 2007.

Publication Ordered Oct. 17, 2007.

Avrum Levicoff, Pittsburgh, for appellants.

Vicki L. Beatty, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, and SIMPSON, Judge.

OPINION BY President Judge LEADBETTER.

Cassandra Richardson Kemp, Richard Mascari, Lorraine Eberhardt Tyler, and Margaret O. Brown (collectively, Appellants) appeal by permission [1] the order of the Court of Common Pleas of Allegheny County (common pleas) granting the City of Pittsburgh Public School District's mo-

---

1. This court granted Appellants' petition for permission to appeal filed pursuant to Pa. R.A.P. 1311 after the trial court amended its order to include the statement that the appeal involves a controlling question of law as to which there are substantial grounds for difference of opinion and that immediate appeal may materially advance the ultimate termination of the case.

tion to transfer jurisdiction to the Secretary of Education.

Appellants held administrative positions[2] in the School District's Office of Academic Affairs. On December 21, 2004, the School Board approved a reorganization of the Office of Academic Affairs; the reorganization was motivated solely by a $17 million budget deficit.[3] As a result of the reorganization, Appellants received notice in February 2005 that their positions had been closed effective June 30, 2005, that new positions would be opening in the Office of Academic Affairs for which they could apply, and that in the event that Appellants were not selected for the new positions, they would be placed with consideration for their seniority and certification.

Appellants were not chosen for the new positions in the Office of Academic Affairs, and in May, June, and July 2005, Appellants Kemp, Mascari, and Eberhardt Tyler received notices that they were being recommended for demotion to positions as school principals effective July 1, 2005, pursuant to Section 1151 of the Public

School Code of 1949 (School Code),[4] and Brown received notice of recommended demotion to the position of school social worker effective July 1, 2005. The notices informed Appellants that, in the event that they did not consent to the demotions, a hearing would be scheduled before the Board of Education (Board).

■ At a hearing before the Board on August 30, 2005, Appellants disputed the characterization of their reassignments as "demotions" rather than "suspensions" or "realignment demotions." The Board upheld the demotions as lawful and not arbitrary or capricious.[5] The Board found that the sole reason for the recommended demotions was the elimination of positions because of the budgetary shortfall and the fact that Appellants were not selected for positions that would not have constituted demotions. The Board found that none of the mandatory factors for suspension enumerated in Section 1124 of the School Code, 24 P.S. § 11–1124, existed and that the recommended demotions were not based on any disciplinary or performance-based factors. The Board found that Appellants were never slated for suspension;

2. Appellants Kemp, Mascari, and Eberhardt Tyler held positions as Executive Directors, reporting only to the Chief Academic Officer, who reported directly to the District Superintendent. Appellant Brown held the position of Program Officer for Safe Schools.

3. Prior to the reorganization, the Office of Academic Affairs had seven Executive Directors: two for elementary schools, two for middle schools, one each for secondary schools, special education, and student services; and an acting director of instructional support. Under the reorganization, four Executive Director positions were eliminated and replaced with an Executive Director of School Management with oversight over all schools; the Executive Director positions for special education and student services were eliminated and replaced with an Executive Director of Support Services to oversee a consolidated special education and support

services department. A third new position, Executive Director of Academic Services, was created to oversee three senior program officers and some responsibilities of the Chief Academic Officer. Appellant Brown's position as Program Officer for Safe Schools was eliminated entirely. Board of Public Education Findings of Fact Nos. 18–23.

4. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1151.

5. If a professional employee does not consent to a demotion, such demotion is subject to the right to a hearing before the Board of School Directors. School Code Section 1151, 24 P.S. § 11–1151. Demotions are presumptively valid, and the employee has the heavy burden of proving that the School Board acted arbitrarily or upon improper considerations. *Ahern v. Chester–Upland School District*, 136 Pa.Cmwlth. 251, 582 A.2d 741 (1990).

that the reorganization did not result in any employee of the School District being suspended, furloughed, or laid off; and that Appellants were placed on the highest step of the salary scale for the position to which he or she was demoted.

Appellants appealed the Board's decision to the court of common pleas, arguing, *inter alia,* that the Board applied the incorrect legal standard in treating their reassignments as demotions; that the reorganization of the Academic Affairs Office was unlawful and resulted in suspensions or realignment demotions within the meaning of School Code Section 1124, 24 P.S. § 11–1124. Appellants sought to put on additional evidence and obtain *de novo* review.

The School District filed a motion to transfer jurisdiction, the grant of which resulted in the present appeal. Applying the two-part analysis adopted by this court in *Hritz v. Laurel Highlands School District,* 167 Pa.Cmwlth. 353, 648 A.2d 108 (1994), the trial judge concluded that the reorganization and reassignment of Appellants did not constitute suspensions or realignment demotions. The trial judge transferred jurisdiction to the Secretary of Education, who has exclusive jurisdiction to hear an appeal of a board of education decision upholding a recommended demotion pursuant to School Code Sections 1151 and 1131, 24 P.S. §§ 11–1151 and 11–1131.

On appeal to this court in seeking reversal of the order transferring jurisdiction, Appellants again argue that the trial court had jurisdiction over their appeal because the reorganization, closing of their prior positions, and their placement in lesser positions constituted suspensions or rea-

6. Section 1125.1 was added by Section 3 of the Act of November 20, 1979, P.L. 465, *as amended.*

7. Section 1151 states in pertinent part:

lignment demotions subject to School Code Sections 1124 and 1125.1, 24 P.S. §§ 11–1124 and 11–1125.1.[6]

■ It is undisputed that professional employees may not be suspended except for the reasons enumerated in School Code Section 1124, 24 P.S. § 11–1124, Causes for suspension.

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

(1) Substantial decrease in pupil enrollment in the school district;

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, ... as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction;

(3) Consolidation of schools, whether within a single district ... or as a result of joint board agreements ...;

(4) When new school districts are established as the result of reorganization of school districts pursuant to Article II., subdivision (i) of this act, and when such reorganization makes it unnecessary to retain the full staff of professional employes.

The enumerated reasons provide the exclusive basis for suspending a professional employee, *Hritz* [citing *Warwick Board of School Directors v. Theros,* 494 Pa. 108, 430 A.2d 268 (1981)]. Section 1151, 24 P.S. § 11–1151,[7] which pertains to demotions, is

[T]here shall be no demotion of any professional employe either in salary or in type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received,

not similarly limited. *Hritz.*[8]

■ Appellants argue that School Code Sections 1124 and 1125.1 demonstrate legislative recognition that broad realignments and reorganizations of personnel that result in suspensions or realignment demotions deserve closer scrutiny and *de novo* review in a court in contrast to demotions, which receive more limited review. Appellants argue that as professional employees they were displaced from their positions as a consequence of broad restructuring within the School District, and even though they were reassigned to other positions, their displacement and reassignment resulted in suspensions or realignment demotions within the meaning of Sections 1124 and 1125.1.

Instead of focusing on the reasons behind the School District's actions in determining whether their reassignments were demotions or suspensions, Appellants characterize their reassignments as realignment demotions based on language in Section 1125.1, which mandates procedures for reorganization and realignment of staff where suspensions have occurred pursuant to Section 1124. What this approach ignores is that Section 1125.1 applies only when professional employees are reassigned for one of the reasons enumerated in Section 1124.

It is undisputed in this case that the Office of Academic Affairs was reorganized solely because of the $17 million budget deficit and not by a decrease in enrollment in the school district, a curtailment or alteration of the education program, consolidation of schools, or the establishment of a new school district. Appellants were not suspended pursuant to Section 1124.

Appellants further argue that they were not subject to pure demotions, but rather that the closing of their positions as part of a reorganization resulted in realignment demotions. Appellants cite to a long line of appellate decisions, beginning with *Shestack v. General Braddock Area School District*, 63 Pa.Cmwlth. 204, 437 A.2d 1059 (1981), which have recognized that the courts of common pleas have jurisdiction to hear appeals of School Board adjudications of contested realignment demotions. We do not agree that these cases apply here.

In *Shestack, as a result of a decline in enrollment* and the closing of a school, employees were suspended and Shestack, the principal, was "demoted." After notification of the change in his employment status, Shestack was granted a hearing at which he challenged the "realignment" pursuant to Section 1125.1 in that he sought reassignment to an elementary principal position. Regardless of the School Board's characterization of Shestack's reassignment as a demotion, this court ruled that Shestack's challenge to the realignment was properly grounded in Section 1125.1(c).[9] Shestack's change in

---

then such demotion shall be subject to the right to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

8. Demotions are presumptively valid, absent proof that a demotion was arbitrary, discriminatory, or founded on improper considerations. *Filoon v. Middle Bucks Vocational–Tech. Sch.*, 160 Pa.Cmwlth. 124, 634 A.2d 726 (1993).

9. In dicta, the court went on to reject the suggestion that subsection (c) is limited in application to suspended employees. However, in *Gibbons v. New Castle Area School District*, 518 Pa. 443, 543 A.2d 1087 (1988), the Supreme Court disapproved this court's language in *Shestack* that would broadly apply Section 1125.1(c) in all cases where a school district realigns its professional staff.

employment status was necessitated by a decline in enrollment and the closing of a school, reasons that fell squarely within Section 1124, and the challenge to the realignment fell within Section 1125.1.

Similarly, in *Fry v. Department of Education*, 86 Pa.Cmwlth. 206, 485 A.2d 508 (1984), as a result of a district-wide *decline in enrollment*, Fry's position as full-time principal was eliminated and he was demoted to a classroom teacher. Fry challenged the realignment under Section 1125.1. This court concluded that because Fry's reassignment was necessitated by the decline in enrollment, it constituted a realignment within the meaning of Section 1125.1(c). Again, the reason for Fry's change in employment status fell squarely within Section 1124. Our decision in *Ginocchi v. Burrell School District*, 104 Pa.Cmwlth. 617, 522 A.2d 707 (1987), summarized, "Realignment in connection with demotions has been associated with the need for staff changes resulting from those situations in which suspension is allowed under Section 1124." *Id.* at 709 (citing *Gibbons; Fry;* and *Shestack*) (footnote omitted).

This court's most recent decisions consistently apply Section 1125.1 only to changes in employment status that result from situations in which suspension is allowed under Section 1124. In *Filoon*, the demotion of a certified masonry instructor was held to be a demotion under School Code Section 1151 because it resulted from a decline in enrollment in only one course. "[O]nly when the demotion results from a suspension [i.e., Section 1124] ... and the attending reorganization does a 'realignment-demotion' addressed in *Shestack* occur." 634 A.2d at 730. *Cf. Piazza v.*

*Millville Area School District*, 155 Pa. Cmwlth. 176, 624 A.2d 788 (1993) (demotion as a result of decline in enrollment appealed to Secretary of Education under Section 1151).

In *Hritz*, an assistant principal's demotion to a teaching position after his position was abolished for economic reasons was held to be a demotion under Section 1151:

> In order for a demotion to constitute a 'realignment-demotion [ ]' [under Section 1125.1(c)], the demotion must be (1) due to one of the enumerated reasons provided in Section 1124 of the Code, ... and (2) involve some sort of regrouping or reorganizing of duties of other professional within the district beyond simply the abolishment of a single position resulting in the demotion of one person.

648 A.2d at 111.[10]

Accordingly, because Appellants' change in employment status was motivated solely by the $17 million budget deficit and not one of the enumerated reasons in School Code Section 1124 justifying suspension, and Appellants' demotions fall within Section 1151, the trial court's order transferring jurisdiction to the Secretary of Education is affirmed.

## *ORDER*

AND NOW, this 25th day of July, 2007, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby AFFIRMED.

---

**10.** We applied *Hritz's* two-factor analysis in *Boris v. Saint Clair School District*, 668 A.2d 264 (Pa.Cmwlth.1995) (demotion to half-time employment as a result of district's decision to discontinue its high school program due to declining enrollment fell under Section 1125.1; trial court had jurisdiction over appeal).